[Crim. No. 14317. First Dist., Div. Three. Oct. 31, 1975.]

THE PEOPLE, Plaintiff and Appellant, v.
NORMAN EUGENE MILLER, Defendant and Respondent.

[Crim. No. 14318. First Dist., Div. Three. Oct. 31, 1975.]

THE PEOPLE, Plaintiff and Appellant, v.
VIRGIL HOY, Defendant and Respondent.

[Crim. No. 14565. First Dist., Div. Three. Oct. 31, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
KENNETH GEORGE MUNROE, Defendant and Appellant.

**COUNSEL**

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Clifford K. Thompson, Jr., and Charles R.B. Kirk, Deputy Attorneys General, for Plaintiff and Appellant and for Plaintiff and Respondent.

Eitzen, Schaub & Diehl, Lawrence O. Eitzen, Mathews, Traverse & McKittrick and Bruce J. Cogan for Defendants and Respondents and for Defendant and Appellant.

Black & Ward and Michael J. Ward as Amici Curiae.

## OPINION

**DRAPER, P. J.**—These three cases all arise from misdemeanor prosecutions for driving while under the influence of intoxicating liquor (Veh. Code, § 23102). All raise the question whether the recent decision of the Supreme Court (*People* v. *Hitch*, 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361]) should be extended to render inadmissible the results of all chemical tests of breath conducted by use of the "Omicron Intoxilyzer." The appellate department of a superior court certified each case to us. In light of the purchase and use of the intoxilyzer in many counties, and the diversified views among lower courts, we ordered transfer. here. (Cal. Rules of Court, rule 62.)

Munroe was convicted of driving under the influence of intoxicating liquor after jury trial in the Justice Court of Del Norte County Judicial District. The prosecution evidence included results of an intoxilyzer test of his breath which showed an alcohol blood content of .16 percent. He appealed. The appellate department held that *Hitch* required not only retention of preservable evidence, but also the reduction of test material to preservable form. It ruled that due process was denied by admission in evidence of the results of the intoxilyzer test, because that instrument does not provide any sample which can be retained for retesting.

The same session of the Legislature which established presumptions based upon the alcohol content of blood as shown by tests of blood, breath, or urine (Veh. Code, § 23126) directed the State Board of Public Health (now State Department of Health) to establish regulations for testing of breath samples to determine the concentration of alcohol in the blood of a subject. (Health & Saf. Code, § 436.52.) Detailed regulations have been issued and are published. (Cal. Admin. Code, tit. 17, art. 6, §§ 1220-1225.) At least two devices, the intoxilyzer and the breathalyzer, have been approved by the Department of Health. *Hitch* considered only the breathalyzer. That device produces test material which can be retested if preserved. The intoxilyzer, however, produces no such material. The subject's breath is captured in a metal chamber, infrared energy of fixed intensity and wave length is passed through the chamber from one side to a photo-electric cell on the other side. Alcohol absorbs

light of the fixed wave length. The device computes the loss of energy, translates the result in terms of the grams of alcohol per 100 milliliters of blood, and prints the result upon a card. In the prescribed operation of the device, clear air is first tested, then the breath of the subject. The chamber is then purged by blowing clear air through it, the clear air is tested, and all three results appear upon the printout card. The two tests of clear air constitute a test of the machine, and should show zero alcohol content. It is apparent that no test result, save the printout card, was available for preservation.

■ The appellate department in *Munroe* held that the rule of *Hitch* must be extended to require that all evidence which can be reduced to preservable form by any means must be so transformed and then retained. We cannot so read *Hitch*.

In *Hitch*, the police had possessed the test ampoule and other paraphernalia which could be kept and for some time would have afforded an opportunity for retesting, and thus for possible impeachment. It was only the "intentional but non-malicious destruction" of this otherwise discoverable evidence (12 Cal.3d at p. 652) which was condemned by *Hitch*. Our view is emphasized by the authorities relied on in *Hitch*. In one such case (*Brady* v. *Maryland*, 373 U.S. 83, 87 [10 L.Ed.2d 215, 218, 83 S.Ct. 1194]), a written statement by a codefendant was withheld despite Brady's request for discovery. Another (*Giglio* v. *United States*, 405 U.S. 150 [31 L.Ed.2d 104, 92 S.Ct. 763]) turned upon failure to disclose a promise to withhold prosecution in return for testimony, and the third (*In re Ferguson*, 5 Cal.3d 525 [96 Cal.Rptr. 594, 487 P.2d 1234]) upon failure to disclose the relevant arrest and sex commitment record of the victim's husband. In all three cases, it is clear that evidence remained available in possession of the prosecution. *Hitch* also analogized to the cases requiring disclosure of the identity of an informer who is a material witness on the issue of guilt (12 Cal.3d at pp. 648-649). There, again, there is no question of possession of the evidence (the informer's name) by the prosecution.

The authority principally relied upon in *Hitch* (*United States* v. *Bryant*, 439 F.2d 642, 651) holds only that "the duty of disclosure attaches in some form once the Government has first gathered and taken possession of the evidence." (12 Cal.3d at p. 650.)

*Hitch* merely holds that evidence which the prosecution once possesses must be held. The test by intoxilyzer, in the language of *Bryant*, may

have "gathered" evidence in the sense of placing the breath in the chamber, but it was not evidence of which the government could "take possession." The only element reducible to possession was the printout card, which has been preserved. The machine itself remains available. It and the frequent testings required by regulations of the Department of Health are available for discovery and possible impeachment. We find it no answer to say, as did the appellate department, that another device, the breathalyzer, could have been used and that, for some undetermined time, it would have preserved a sample chemical subject to reasonably accurate testing. The intoxilyzer has been subjected to rigid scrutiny and testing by a state agency qualified in this technical field. It has been approved for use under the detailed regulations prescribed by that agency. Substantial numbers of the intoxilyzer have been purchased by the State Department of Justice and by many counties. We do not understand *Hitch* to enter into the highly intensified competition among manufacturers of breath testing devices, which already has reached the stage of litigation (e.g., *Intoximeters, Inc.* v. *Younger,* 1 Civ. No. 35577*) or to create a monopoly in that commercial field.

The unwarranted extension of *Hitch* could have strange and unsettling results. If all evidence which can be made demonstrative *must* be so transformed, we shall encounter problems with extrajudicial declarations which, with fortuitous foresight, could have been tape recorded, and eyewitness observations of events which could have been photographed.

In view of our determination of the basic issue, we do not elucidate the obvious point that *Hitch*, by its express terms, applies only to tests of breath administered after its filing, October 21, 1974. All the tests in the three cases before us were conducted before that date.

Both *Miller* and *Hoy* dealt with pretrial suppression orders under section 352 of the Evidence Code, and with dismissal thereafter entered by the municipal court. The Appellate Department of the Humboldt County Superior Court properly noted that the suppression orders were premature and not appealable although it approved their reasoning. It reversed both orders of dismissal on the sole ground that other evidence than the test results might be offered.

In *Munroe,* the justice court judgment of conviction is affirmed. In *Miller* and *Hoy,* the municipal court orders of dismissal are reversed, the

*Reporter's Note: Pursuant to direction of Supreme Court by order dated November 25, 1975, the opinion was published. See 53 Cal.App.3d 262.

appeals from the orders of suppression are dismissed, and upon retrial the municipal court will be guided by the views of *Hitch* here expressed, rather than those of the appellate department.

Brown (H. C.), J., and Scott, J., concurred.

Petitions for a rehearing were denied November 28, 1975, and the petitions of the defendants and respondents and the defendant and appellant for a hearing by the Supreme Court were denied December 30, 1975.