604 P.2d 617

**Jesus V. BACA, Petitioner,**

v.

**The Honorable Ralph G. SMITH, Judge of Division 1 of City Court, The Honorable Alan Hammond, Chief Magistrate of City Court, The City Court of Phoenix, Real Parties in Interest, Respondents.**

No. 14500.

Supreme Court of Arizona, In Banc.

Nov. 27, 1979.

Rehearing Denied Jan. 3, 1980.

Solomon, Relihan & Blake, by Martin J. Solomon, Phoenix, for petitioner.

Andy Baumert, Phoenix City Atty., by George H. Bonsall, Asst. City Prosecutor, Phoenix, for respondents.

STRUCKMEYER, Vice Chief Justice.

This special action was brought by Jesus V. Baca against respondent, The Honorable Ralph G. Smith, and others, asserting that the failure to suppress the results of a gas chromatograph intoximeter taken after an arrest for driving while under the influence of intoxicating liquor was a denial of due process of law. This Court has jurisdiction by Art. 6, § 5(4) of the Constitution of Arizona and 17A A.R.S., Special Actions, Rules of Procedure, Rules 3(b) and (c).

Petitioner was arrested in Phoenix in the early morning hours of April 2, 1979, and charged with driving while under the influence of intoxicating liquor, a violation of A.R.S. § 28–692(A). He was thereafter administered a gas chromatograph intoximeter test to determine his blood alcohol level. The gas chromatograph intoximeter test is administered by means of two different machines. There is a device by which the suspect blows directly into the machine which tests the breath as it passes through the machine and indicates the result on a digital display and a printout. In this test, the sample of the suspect's breath is destroyed by the analysis. It is our understanding that petitioner's breath was tested by this machine.

However, there is also what is called a field collection unit. In the field collection unit, the subject is asked to blow through a mouthpiece connected to the machine. The breath passes through a short length of indium tubing. At the proper time, which is at the end of the exhalation, a handle attached to a crimper device is closed, crimping the indium into three separate compartments and sealing off three specimens of the last breath to leave the subject's lungs. The indium tubing is then sent to the blood alcohol section of the City of Phoenix Police Department, where it is analyzed. Analysis is made by a machine called a G.C.I. Mark IV. A special compartment in the G.C.I. Mark IV is opened and one of the three specimens which have been obtained is placed in the compartment, where the indium capsule is perforated. The breath and the alcohol are separated and detected in what is described as a flame ionization detector. The result is shown on a digital display and printed out on a strip chart recording. A second specimen is then analyzed. This procedure takes about three minutes after the G.C.I. Mark IV has been properly set up.

Petitioner on August 28, 1979 filed a motion to suppress the result of the police test. This motion was denied by respondent judge. We accepted jurisdiction because of the assertion that five of the regular appointed City of Phoenix Municipal Court Magistrates routinely grant suppression of the results of the intoximeter, while eight routinely deny the suppression.

On April 18 of this year, this Court handed down its opinion in *Scales v. City Court of Mesa,* 122 Ariz. 231, 594 P.2d 97 (1979). There, Scales was arrested for driving while intoxicated and given a breath test by means of a Breathalyzer. The Breathalyzer, as described in the opinion, forces a sample of a suspect's breath through a test ampoule containing certain chemicals. The alcohol contained in the breath reacts with the chemicals in the ampoule, causing them to change color. The machine then causes a light to pass through the test ampoule and the color of the light determines the level of the suspect's blood alcohol content. Scales urged that due process required the test ampoule be preserved so it could be inspected by petitioner. We held:

"Destruction of the ampoule deprives the defendant of a crucial source of evidence with which to attack the validity of the test reading and hence the presumption [of intoxication]." *Id.* at 234, 594 P.2d at 100.

We concluded that *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), required the retention of the Breathalyzer ampoule because its subsequent physical examination might disclose matters which could cause the result to be incorrect.

The question presented now for determination is whether, when a sample of a suspect's breath is consumed in the analysis, another sample must be taken and preserved for the private use of the suspect.

Respondents urge one jurisdiction has specifically rejected the argument that due process requires the preservation of a suspect's breath, citing *People v. Miller*, 52 Cal.App.3d 666, 125 Cal.Rptr. 341 (1975). That case was a consolidation of three prosecutions transferred to the California Court of Appeals, 1st District, Division 3. The instrument used was an "Omicron Intoxilyzer", similar to the intoximeter in that it does not leave any residual evidence which can be retained for subsequent examination other than a printout card of the results. In holding that a suspect's breath was not required to be reduced to a preservable form before the results of its chemical testing would be held admissible, the court said:

> "*Hitch* [*People v. Hitch*, 12 Cal.3d 641, 117 Cal.Rptr. 9, 527 P.2d 361 (1974)] merely holds that evidence which the prosecution once possesses must be held. The test by intoxilyzer, in the language of *Bryant* [*U. S. v. Bryant*, 142 U.S.App. D.C. 132, 439 F.2d 642 (1971)], may have 'gathered' evidence in the sense of placing the breath in the chamber, but it was not evidence of which the government could 'take possession.' The only element reducible to possession was the printout card, which has been preserved. The machine itself remains available. * * * We find it no answer to say * * * that another device, the breathalyzer, could have been used and that, for some undetermined time, it would have preserved a sample chemical subject to reasonably accurate testing. * * *" *Id.* at 670, 125 Cal.Rptr. at 343.

The California court did not reach the question we are asked to decide here; namely, whether a sample of a suspect's breath must be saved for his later independent use.

Respondents also rely on *State v. Reyna*, 92 Idaho 669, 448 P.2d 762 (1968), a case which rejected the argument that the state had to take affirmative steps to collect the names of witnesses, patrons of a bar, whose testimony the defendant believed would be exculpatory on the issue of his sobriety. The Idaho court said that the prosecution cannot be said to conceal evidence it does not possess or control.

Petitioner relies strongly on the holding in *Garcia v. District Court, 21st Judicial District*, 589 P.2d 924 (Colo.1979). It was a consolidation of two prosecutions. In the prosecution of Andrew Joe Garcia, Garcia was operating a motor vehicle when he was stopped and given a roadside sobriety test by means of a Breathalyzer, the same machine considered in *Scales v. City Court of Mesa,* supra. In the companion case of Kenneth Ray Feland, the blood alcohol test was performed with a "Luckey Alco-Analyzer" gas chromatograph. Seemingly, the Luckey Alco-Analyzer performs the test on a suspect's breath in a manner somewhat similar to that of the intoximeter used in the present case. Feland, prior to trial, asked that he be provided with a sample of his breath taken at the time of the blood alcohol test and was informed that no separate sample of his breath had been preserved. At Feland's trial, an expert witness testified that if a sample of Feland's breath had been preserved, it would have been possible to retest his blood alcohol level. The court held, after pointing out that a separate sample of the defendant's breath had not been collected and preserved:

> " * * * But this fact does not mean that the defendants' case must fall. The failure of the state to collect and preserve evidence, when those acts can be accomplished as a mere incident to a procedure routinely performed by state agents, is tantamount to suppression of that evidence. It is incumbent upon the state to employ regular procedures to preserve evidence which a state agent, in the regular performance of his duties, could reasonably foresee ' "might" be "favorable" to the accused.' *People v. Bryant, supra; People v. Poole,* 192 Colo. 56, 555 P.2d 980 (1976); *State v. Maloney,* 105 Ariz. 348, 352, 464 P.2d 793, *cert. denied, sub nom. Maloney v. Arizona,* 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970); Comment, *Judicial Response to Governmental Loss or Destruction of Evidence,* 39 U.Chi.L.Rev. 542 (1972).

* * * * * *

The trial of a criminal case is not a game of fox and hounds in which the state attempts to outwit and trap a quarry. *Giles v. Maryland,* 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967) (Fortas, J., concurring). It is, instead, a sober search for truth, in which not only the resources of the defendant, but those readily available to the state must be put to work in aid of that search." 589 P.2d at 929–30.

The Colorado court held that in all cases, where a suspect submits to a breath test to determine blood alcohol level, he must be given a separate sample of his breath in such a form as will permit independent testing by him.

■ We conclude after considering these and other cases that the right to test incriminating evidence where the evidence is completely destroyed by testing becomes all the more important because the defense has little or no recourse to alternate scientific means of contesting the test results, and, therefore, when requested, the police must take and preserve a separate sample for the suspect by means of a field collection unit. We do not think it is necessary in every case that a separate sample of a suspect's breath be taken and preserved for his future use. The record in this case supports the conclusion that the cost of taking and preserving a sample of a suspect's breath is approximately $10.00. A requirement that every test must be accompanied by the preservation of a sample for the suspect's possible use is an unnecessary expense for the reason that the charge of unlawful intoxication may never be contested.

■ We therefore hold that if a suspect is clearly advised that a second sample of his breath will be taken and preserved for his use and he does not demand in writing on forms provided by the arresting authority that a sample be taken and preserved for him, we will consider that he has waived the taking and preservation of a second sample.[1] If a suspect demands that a second sample of his breath be taken, a

copy of the form will be given to him. If the suspect demands that the second sample be taken, he must also be told that in the event he is convicted of a charge in which the result of the intoximeter is used by the prosecution, the costs of the extra sample will be chargeable against him and that it will not be so charged in the event he is found not guilty.

Lucian Haag, a licensed blood alcohol analyst and criminologist in Arizona, testified in a proceeding in the Municipal Court of the City of Phoenix in the parallel case of *State of Arizona ex rel. Andy Baumert v. Municipal Court of the City of Phoenix, et al.,* 124 Ariz. 357, 604 P.2d 621, to this effect:

"Q. Mr. Haag, you were speaking about the possibility of a crimped sample deteriorating through various means, when you were on cross-examination, do you recall?

A. I think I listed about three possibilities. One, the natural, possible natural consequences and two; by deliberate interdiction.

Q. Right now, you have not run any experiments, with regard to either of those possibilities, to verify your opinion, on cross-examination, with regard to deterioration, have you?

A. Yes, I have, as to the first; the passage of time.

Q. The passage of time.

Those experiments, on the passage of time, when did you find that the deterioration started to take place?

A. I have seen it within five days, to a week.

Q. So, excluding your second possibility; of deliberate tampering, within five days, you would not question a sample as having been deteriorated, is that correct?

A. I would feel comfortable with the results, assuming no leakage had occurred, if agreement were present between the middle capsule and the end, out to four days.

---

1. The form should provide, over the suspect's signature, that he has been advised of his rights

and does not require that an additional breath sample be preserved for him.

I would expect to get the result of possibly, something lower than the result, beginning on the fifth day or by a week or more.

\* \* \*"

 We therefore hold that the suspect shall be told that the intoximeter sample will be preserved for seven days for delivery to him or his agent and that thereafter it will be destroyed, and that if the sample is not claimed within seven days, the cost may be assessed against him on conviction.

Finally, we hold that our ruling today is prospective only from the date of our mandate herein. Since petitioner did not request that a sample of his breath be taken and preserved for his future use, we will not disturb the ruling of the City Court denying the motion to suppress.[2]

Prayer for relief denied.

CAMERON, C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.

---

**2.** Petitioner some time during the night of his arrest requested that a blood test be taken. Apparently the City does not permit its employees or agents to take a blood sample of a suspect, and no blood was taken. Petitioner was told he could use a telephone to make a call if he desired.