MUNICIPALITY OF ANCHORAGE,
Petitioner,

v.

Gilbert SERRANO, Alvin Aspelund, Dennis R. Dean, Thomas F. Criego, David K. Watson, Otis Trammell, and Richard Butler, Respondents.

Kay CISNEROS, Kenneth Scollan, and Kenneth Greene, Petitioners,

v.

STATE of Alaska, Respondent.

Beverly BRUNDAGE, Kurt E. Jenkins, James Klemenston, Yong Kim, Charles Olson, and Jeff Jansen, Petitioners,

v.

STATE of Alaska, Respondent.

Nos. 6447, 6724 and 6725.

Court of Appeals of Alaska.

Aug. 6, 1982.

Allen M. Bailey, Municipal Prosecutor, and Theodore D. Berns, Municipal Atty., Anchorage, for Municipality of Anchorage.

Marc W. June, Birch, Horton, Bittner, Monroe, Pestinger & Anderson, Timothy H. Stearns, Kevin F. McCoy, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for Gilbert Serrano, et al.

Timothy H. Stearns, Anchorage, for Kay Cisneros, et al.

Susan Orlansky, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for Beverly Brundage, et al.

Martha Beckwith, Asst. Dist. Atty., Larry R. Weeks, Dist. Atty., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for State of Alaska.

Before BRYNER, C. J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Petitioners Kay Cisneros, et al., were arrested for driving while intoxicated under

AS 28.35.030.[1] Pursuant to Alaska's implied consent law, AS 28.35.031,[2] each submitted to a breathalyzer test. Respondents Gilbert Serrano, et al., were arrested for driving while intoxicated under AMC 9.28.-020.[3] Pursuant to Anchorage's implied consent ordinance, AMC 9.28.021,[4] they too submitted to breathalyzer tests. In each case, the test result was 0.10 grams or more of alcohol per 210 liters of breath.

The cases were consolidated before District Court Judge Cutler. A motion was filed to suppress the breathalyzer tests in each of the cases on the grounds that the failure to preserve a breath sample at the time of testing violated the defendants' due process right to confront and cross-examine the evidence against them. Following a lengthy evidentiary hearing, Judge Cutler granted the suppression motion on July 31, 1981. The state and city requested reconsideration and new evidence was presented to the court. On September 25, 1981, Judge Cutler vacated her order suppressing the breathalyzer results, finding that it was not possible for breath samples to have been preserved at the relevant times. A third evidentiary hearing was held and Judge Cutler reinstated her suppression order after having been convinced that breath samples could have been saved. The municipality petitioned for review from this order and we granted the petition for review.

Meanwhile, the State of Alaska petitioned the superior court for review. Judge Carlson reversed Judge Cutler's order, ruling as a matter of law that due process does not require the preservation of breath samples. The issue has now been placed before this court by means of petitions for hearing filed by Kay Cisneros, et al. and Beverly

1. AS 28.35.030(a) provides:
   A person commits the crime of driving while intoxicated if he operates or drives a motor vehicle
   (1) while under the influence of intoxicating liquor, depressant, hallucinogenic, stimulant or narcotic drugs as defined in AS 17.10.-230(13) and AS 17.12.150(3);
   (2) when there is 0.10 percent or more by weight of alcohol in his blood or 100 milligrams or more of alcohol per 100 milliliters of his blood, or when there is 0.10 grams or more of alcohol per 210 liters of his breath; or
   (3) while he is under the combined influence of intoxicating liquor and another substance.

2. AS 28.35.031 provides:
   *Implied consent.* A person who operates or drives a motor vehicle in this state shall be considered to have given consent to a chemical test or tests of his breath for the purpose of determining the alcoholic content of his blood or breath if lawfully arrested for an offense arising out of acts alleged to have been committed while the person was operating or driving a motor vehicle while intoxicated. The test or tests shall be administered at the direction of a law enforcement officer who has reasonable grounds to believe that the person was operating or driving a motor vehicle in this state while intoxicated.

3. AMC 9.28.020(B) prior to June 2, 1981, provided:
   A person commits the crime of driving while intoxicated if he operates, drives or is in actual physical control of a motor vehicle

   (1) while under the influence of intoxicating liquor, depressant, hallucinogenic, stimulant or narcotic drugs as defined in AS 17.10.-230(13) and AS 17.12.150(3);
   (2) when there is 0.10 percent or more by weight of alcohol in his blood or 100 milligrams or more of alcohol per 100 milliliters of his blood, or when there is 0.10 grams or more of alcohol per 210 liters of his breath; or
   (3) while he is under the combined influence of intoxicating liquor and another substance.
   On June 2, 1981, subparagraphs two and three were amended as follows:
   2. when there is 0.10 percent or more by weight of alcohol in his blood or 100 milligrams or more of alcohol per 100 milliliters of his blood, or when there is 0.10 grams or more of alcohol per 210 liters of his breath as determined by a chemical test within four hours of his arrest; or
   3. while he is under the combined influence of intoxicating liquor and another substance to a degree which renders him incapable of driving safely.

4. AMC 9.28.021 provides:
   A person who operates or drives a motor vehicle in the municipality shall be considered to have given consent to a chemical test or tests of his breath for the purpose of determining the alcoholic content of his blood or breath if lawfully arrested for an offense arising out of acts alleged to have been committed while the person was operating or driving a motor vehicle in the municipality while intoxicated.

Brundage, et al. We granted the petitions for hearing.

■ Having considered the issue raised by these consolidated petitions, we conclude that the due process clause of the Alaska Constitution requires the prosecution to make reasonable efforts to preserve a breath sample or to take other steps to allow a defendant to verify the results of the breathalyzer test.[5] Alaska Const. art. 1, § 7. Accordingly, we affirm the suppression order of the district court and reverse the order of the superior court.

We believe that the result in the instant case turns on the interpretation of *Lauderdale v. State*, 548 P.2d 376 (Alaska 1976). In that case the Alaska Supreme Court required that used ampoules from the breathalyzer test be preserved for the defendant's examination. The court held:

Lauderdale is asking for the opportunity to test the reliability or credibility of the results of the breathalyzer test. He wishes to do this by a scientific analysis of some of the components of the breathalyzer machine, that is, the ampoules, which we have held may well yield scientifically reliable data bearing on his innocence or guilt of the crime with which he is charged. A denial of the right to make such analysis, that is to say, to "cross-examine" the results of the test, would be reversible error without any need for a showing of prejudice. It would be denial of a right to a fair trial, and a fair trial is essential to affording an accused due process of law. The district court was correct in suppressing the evidence of the breathalyzer test on due process grounds.

*Id.* at 381 (footnotes omitted).[6]

The state and municipality have pointed out that while *Lauderdale* involved the

---

**5.** Given the importance of the breathalyzer test in prosecutions for driving while intoxicated, we believe that constitutional due process requires prosecuting authorities to take reasonable steps to assure that drivers arrested for the offense are afforded the opportunity to conduct an independent test to assure the accuracy of the breathalyzer results. We recognize that in *Palmer v. State*, 604 P.2d 1106, 1110 (Alaska 1979), the Alaska Supreme Court held that a person did not have to be advised of his right to an independent test. We do not believe our ruling is inconsistent with that holding. Our decision does not require the prosecution to inform persons arrested for drunk driving of their right to an independent test. We hold only that before the results of a breathalyzer test can be admitted evidence in a prosecution for driving while intoxicated, due process requires that the defendant be given some opportunity to secure independent testing of the accuracy of the breathalyzer test administered.

Preservation of breath samples is one way that the due process requirement can be satisfied. Breath sample preservation was given primary focus by the parties in development of the record below, and it appears to be a reasonably effective and efficient means of assuring that breathalyzer results can be independently confirmed. We would emphasize, however, that other methods of providing opportunities for independent testing might also satisfy the requirement of due process.

In this regard, we would specifically note the provisions of AS 28.35.033(e), which expressly permit people who have taken a breathalyzer examination to have a separate chemical test performed by someone of their own choosing.

We believe that effective compliance with AS 28.35.033(e) would constitute an acceptable alternative to routine preservation of breath samples. In order to establish effective compliance with AS 28.35.033(e), however, we believe that the prosecution would, at a minimum, have to show the following: (1) that the officer who administered the breathalyzer test clearly and expressly informed the defendant of his right to secure an independent test under AS 28.35.-033(e); (2) that if the defendant requested an independent test, the officer who performed the breathalyzer test or other officers having actual physical custody of the defendant made reasonable and good-faith efforts to assist the defendant in obtaining access to a person qualified to perform an independent examination; and (3) that persons qualified to conduct independent tests or to preserve blood or breath samples for the purpose of conducting independent tests were in fact available in the area where the breathalyzer test was administered. Because the appellate record is silent as to whether any of the defendants herein were actually informed of their right to independent testing under AS 28.35.033(e), we need not give further consideration to this alternative. We do not, however, foreclose the prosecution from seeking to establish effective compliance with AS 28.35.033(e) upon remand to the district court.

**6.** Decisions addressing the preservation of evidence generally look to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), as the leading United States Supreme Court case on the issue. There, the court stated:

We now hold that the suppression by the prosecution of evidence favorable to an ac-

preservation of evidence already in existence, the instant case poses a situation in which the evidence must first be gathered prior to preservation. We do not believe that *Lauderdale* can be restricted to merely require the state to preserve existing evidence.[7] It appears to us that there are instances when due process can require additional testing or investigation, such as where the additional evidence so obtained is of sufficient materiality and where the cost and effort involved in obtaining it are reasonable. *See Mallott v. State*, 608 P.2d 737, 743 n.5 (Alaska 1980) (law enforcement agencies advised that as part of their duty to preserve evidence it is incumbent upon them to tape record questioning of the defendant where feasible).

We conclude that due process does require the state and the municipality to take reasonable steps to attempt to preserve breath samples for defendants for their independent analysis or to provide some other alternative check of the breathalyzer results. The evidence presented at the hearings which were held in these cases indicated that a breath sample could be highly material. The evidence presented below established that the operation of the breathalyzer machine is dependent upon the proper performance of critical functions by the operator. A breath sample would help to provide a check on possible operator error and would provide a means of assuring that the breathalyzer mechanical components were not malfunctioning. A breath sample would also provide a means of determining whether the test result was in any way affected by the breathalyzer's inherent inaccuracy.[8] By making it an offense to operate a car with a certain level of blood or breath alcohol, the current state statute and the city ordinance both place great emphasis on the breath tests. The ability of the defendant to "cross-examine" these tests is critical to his case and to the integrity of the criminal justice system.

Further, we do not believe that a breath sample preservation requirement would place an undue burden upon law enforcement officials. Although the state and municipality argued that a suitable system for the preservation of samples of defendants' breath could not be accomplished at reasonable cost and with sufficient accuracy, we conclude that the defendants in these cases have shown that the technology does exist to set up a reasonable system for preserving breath samples. We note that Colorado, Arizona, and Vermont require breath samples to be preserved for defendants. *Baca v. Smith*, 124 Ariz. 353, 604 P.2d 617 (1979); *Garcia v. District Court*, 197 Colo. 38, 589

---

cused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.
*Id.* at 87, 83 S.Ct. at 1196, 10 L.Ed.2d at 218.

7. In *People v. Miller*, 52 Cal.App.3d 666, 125 Cal.Rptr. 341 (1975), the court refused to extend an earlier decision which required the preservation of breathalyzer test ampoules, holding that the police were not required to secure and preserve a breath sample. In reaching this decision, the court relied heavily on the distinction between preserving evidence already in existence and preserving evidence which first had to be gathered. *Id.* 125 Cal. Rptr. at 343. However, we note that in holding in favor of a breath sample preservation requirement, the court in *Garcia v. District Court*, 197 Colo. 38, 589 P.2d 924, 929–30 (1979), stated:

In these cases, the separate samples of the defendant's breath have been neither suppressed nor destroyed—they were never collected and preserved. But this fact does not mean that the defendants' case must fall.

The failure of the state to collect and preserve evidence, when those acts can be accomplished as a mere incident to a procedure routinely performed by state agents, is tantamount to suppression of that evidence. It is incumbent upon the state to employ regular procedures to preserve evidence which a state agent, in the regular performance of his duties, could reasonably foresee 'might' be 'favorable' to the accused.' [Citations omitted.]

8. The expert testimony revealed that the breathalyzer used by city and municipal law enforcement agencies is accurate within a range of plus or minus 10 percent at the 0.10 percent level. By contrast, a gas chromatography method of breath testing is accurate within a range of plus or minus three percent.

A testing of the preserved breath sample on a more accurate gas chromatograph could provide a valuable second check on the initial breathalyzer test result.

P.2d 924 (1979); Vt.Stat.Ann. tit. 23, § 1203(a) (1981). The *Garcia* court expressly stated that its decision was based in part on a record "replete with evidence that a sample of the defendant's breath could have been preserved inexpensively and expediently." 589 P.2d at 928. It is noteworthy that the two state courts which have ruled against a duty to preserve a breath sample did not conclude that the preservation of breath samples was too expensive or that testing of these samples would be inaccurate. In *State v. Young*, 228 Kan. 355, 614 P.2d 441, 442 (1980), the court was faced with a stipulation of the parties and a finding by the trial court that there was "no substantial cost to the State of Kansas by way of time or money to make a sample of breath available to the defendant when breath samples are taken for alcohol testing. . . ." The Kansas Supreme Court did not reject this finding but concluded that under the Kansas statutes, preservation of a second breath sample was not required. The court in *People v. Miller*, 52 Cal.Rptr. 666, 125 Cal.Rptr. 341 (1975), likewise did not conclude that saving a second breath sample was impractical. The court simply ruled that although the prosecution had a duty to preserve evidence which was in existence, it did not have a duty to do additional testing to create additional evidence.

Finally, we note that neither of the judges who considered this question in the cases at bar concluded that imposing a duty of preserving a breath sample would be unreasonably expensive or infeasible. After hearing extensive evidence, District Court Judge Cutler concluded that there are acceptable, inexpensive methods available which could be used to preserve a breath sample for the defendant. Superior Court Judge Carlson reversed Judge Cutler's ruling, but specifically did not reach the question of whether it was economically feasible to preserve a breath sample.[9]

We have independently reviewed the record of the extensive testimony which was presented below, and conclude that the technology is available to preserve breath samples at reasonable cost. Given the importance of the breath tests in driving while intoxicated cases, we conclude that due process does require the prosecution to make reasonable efforts to preserve a breath sample in those cases in which they wish to admit the results of a breath test.

■ Our decision in this case should be applied mainly prospectively, since there has been considerable reasonable reliance on the prior standard of law by law enforcement officials. *See State v. Glass*, 596 P.2d 10, 12 (Alaska 1979); *Lauderdale v. State*, 548 P.2d at 383; *Rutherford v. State*, 486 P.2d 946, 952–53 (Alaska 1971).[10]

■ In any decision announcing a new rule of law, it is clear that the defendant who brings the case in which the new decision is announced is entitled to have the new rule of law applied to his case. *State v. Glass*, 596 P.2d at 12. As the supreme court recognized in *Glass*, any decision concerning the applicability of a new decision to other cases is arbitrary. We have concluded that in deciding the issue of retroactivity, we should follow the *Glass* decision, the latest pronouncement on retroactivity from the Alaska Supreme Court. Accordingly, we conclude that this decision should

---

9. The issue of breath sample preservation was also raised in the companion case of *Cooley v. Municipality of Anchorage*, 649 P.2d 251 (Alaska App. 1982). Extensive evidence was presented, and although Superior Court Judge Souter ruled that the state and municipality were under no duty to preserve a breath sample for defense purposes, he did expressly conclude that the technology currently existed to enable a breath sample to be preserved at low cost.

10. Although our decision to require the preservation of a breath sample relates to the accuracy of the evidence which is introduced at trial, we do not find that the breathalyzer evidence is so suspect that we must require its suppression where a breath sample was not preserved. On the contrary, the evidence establishes that the breathalyzer is an accurate method for measuring the percentage of alcohol in the breath.

For this reason we also conclude that it is inappropriate to dismiss the charges against defendants. The remedy of suppression of the breathalyzer results is sufficient.

only apply to those cases which have been consolidated for consideration here and in *Cooley v. Municipality of Anchorage,* 649 P.2d 251 (Alaska App.1982); to those cases in which suppression of the breathalyzer test has already been ordered by the lower courts; and to cases which arise after the date of this decision.[11]

In the cases to which this ruling applies, we hold that the breathalyzer test is suppressed for use at trial. Assuming that there is sufficient evidence to retry a de-fendant without the use of the breathalyzer test, the city and state are free to do so.

The suppression order of the district court is AFFIRMED and the order of the superior court is REVERSED.

11. The briefing and evidentiary record in the instant cases and the *Cooley* cases were con-sidered by us as one case and were influential in our ruling.