[No. AO16358. First Dist., Div. Four. Mar. 28, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
ALBERT WALTER TROMBETTA, Defendant and Appellant.

[No. AO16374. First Dist., Div. Four. Mar. 28, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL GENE COX et al., Defendants and Appellants.

[No. AO17265. First Dist., Div. Four. Mar. 28, 1983.]

In re GREGORY MOLLER WARD on Habeas Corpus.

[No. AO17266. First Dist., Div. Four. Mar. 28, 1983.]

In re GALE BERNELL BERRY on Habeas Corpus.

**COUNSEL**

John F. De Meo and Thomas R. Kenney for Defendants and Appellants.

Ed Kuwatch as Amicus Curiae on behalf of Defendant and Appellant.

J. Frederick Haley and John A. Pettis for Petitioners.

James R. Jenner, Public Defender, and Scott A. Sugarman, Assistant Public Defender, as Amici Curiae on behalf of Defendants and Appellants and Petitioners.

George Deukmejian and John K. Van de Kamp, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Charles R. B. Kirk and Gloria F. DeHart, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**POCHÉ, J.**—These cases arise, in diverse procedural settings, from misdemeanor prosecutions for driving under the influence of intoxicating liquor (formerly Veh. Code §§ 23101, subd. (a), or 23102, subd. (a); now §§ 23153, subd. (a), or 23152, subd. (a), respectively). The issue raised is whether intoxilyzer breath results are rendered inadmissible in a trial for driving under the influence of intoxicating liquor by virtue of the failure of law enforcement officials to preserve a retestable breath sample.

In each case the municipal court denied the defendant's common law motion to suppress the evidence obtained from an intoxilyzer breath test. Each defendant then appealed to the superior court which affirmed the lower court order; the cases were then certified for transfer to this court. In the *Trombetta* and *Cox* groups of cases this court accepted transfer. It appears that *Trombetta* and its companion case have not proceeded to trial. The record does not indicate whether the cases in the *Cox* group have proceeded to trial; no judgment was entered in these cases.

An appeal may not be taken from a pretrial order of the municipal court. (Code Civ. Proc., § 904.2.) The correct procedure in *Trombetta* and *Cox* would therefore have been for the defendants to wait until a judgment was entered in the municipal court and then appeal that judgment. Because no appealable order was challenged in *Trombetta* or *Cox* those appeals should have been dismissed by the appellate department of the superior court. (*People* v. *Superior Court (Scott)* (1980) 112 Cal.App.3d 602, 606 [169 Cal.Rptr. 412].)

In the *Ward* and *Berry* cases judgments of conviction were followed by superior court appeals; transfers to the Court of Appeal were denied whereupon those defendants petitioned the Supreme Court for writs of habeas corpus. The Supreme Court issued orders in *Ward* and *Berry* to show cause before this court why relief should not be granted.

Each defendant was arrested for driving under the influence of alcohol. (Formerly Veh. Code §§ 23101, subd. (a), or 23102, subd. (a); now §§ 23153, subd. (a), or 23152, subd. (a), respectively.) Each was asked to select any one of three blood alcohol level tests (breath, blood, or urine). Law enforcement officers urged the defendants to select the breath test and each did select that test. The breath tests were conducted on an Omicron Intoxilyzer. Each defendant's breath registered an alcohol level of at least 0.10. No defendant was told that a breath sample would be saved.

The Legislature has established a presumption that a driver whose blood alcohol level is less than 0.05 percent is not under the influence of an acoholic beverage. If the blood alcohol level is between 0.05 percent and 0.10 percent, no presumption arises. (Veh. Code, § 23155, subd. (a).) However, another statute provides "It is unlawful for any person who has a 0.10 percent or more, by weight, of alcohol in his or her blood to drive a vehicle upon a highway or upon other than a highway in areas which are open to the general public. . . ." (Veh. Code, § 23152, subd. (b).) Thus, the statute establishes guilt where chemical blood alcohol tests prove that the percent of alcohol is 0.10 percent or more, without any showing of actual impairment.

Given the importance of accurate determination of blood alcohol levels, and the greater convenience of breath testing as opposed to testing of blood or urine, the Legislature has directed the State Department of Health Services to establish, by regulation, procedures to be used by law enforcement agencies in administering breath tests for the purposes of determining the concentrations of alcohol in a person's blood. (Health & Saf. Code, § 436.52.) These regulations are contained in title 17 of the California Administrative Code, section 1220 et seq. Three of the breath testing devices which require discussion had been approved by the Department of Health Services as of December 20, 1979: the intoxilyzer, the breathalyzer, and the intoximeter field crimper-indium tube encapsulation kit.

A brief description of the operation of the intoxilyzer follows: Prior to any test, the device is purged by pumping clean air through it until readings of 0.00 are obtained. The breath test requires a sample of "alveolar" (deep lung) air (Cal. Admin. Code, tit. 17, § 1219.3); to assure that such a sample is obtained, the subject is required to blow air into the intoxilyzer at a constant pressure for a period of several seconds. A breath sample is captured in the intoxilyzer's

chamber and infrared light is used to sense the alcohol level. Two samples are taken, and the result of each is indicated on a printout card. The two tests must register within 0.02 of each other in order to be admissible in court. After each test, the chamber is purged with clean air and then checked for a reading of zero alcohol. (See *People* v. *Miller* (1975) 52 Cal.App.3d 666, 668-669 [125 Cal.Rptr. 341].) The machine is calibrated weekly, and the calibration results, as well as a portion of the calibration samples, are available to the defendant.

The breathalyzer operates on a completely different principle. (See *People* v. *Hitch* (1974) 12 Cal.3d 641, 644 [117 Cal.Rptr. 9, 527 P.2d 361].) To conduct a breathalyzer test, the breath sample is captured in a glass ampoule containing exactly three cubic centimeters of a chemical solution. If alcohol is present, it changes the translucency of the solution. The alcoholic content is then measured by shining a beam of light through the solution. The test ampoule and the test solution can then be retained for retesting by the defendant.

Finally, the operation of the intoximeter field crimper-indium tube encapsulation kit must be considered. This "kit" can be used in the field to collect a breath sample which is separate from the sample collected by the intoxilyzer. The device is independent from the breath testing devices and is in effect only a breath *collection* as opposed to a breath *testing* device. The subject blows into an indium tube which captures the breath sample. The indium tube is a soft metal device used to capture and preserve a breath specimen for later analysis. The tube originally is in a single piece but when the sample is blown into the tube, it can be crimped to hold the breath sample in three separate compartments. These containers can then be placed in a gas chromatograph (intoximeter) device which will test the sample for blood alcohol content. The gas chromatograph is an approved device for blood alcohol determination; the indium tube is approved for use with the gas chromatograph if the sample is tested within 14 days of collection. (Instruments Approved for Breath Alcohol Analysis, Dept. of Health, Dec. 20, 1979.)

Defendants contend that there are three grounds upon which this court should require suppression of the evidence obtained from the intoxilyzer tests: the duty of the prosecution to preserve evidence, equal protection, and requirements of informed consent. We deal only with the first ground.

■ The contention is that under *People* v. *Hitch, supra*, 12 Cal.3d 641, the failure of law enforcement personnel to capture and preserve a retestable breath sample violated due process and rendered the intoxilyzer results inadmissible. In *Hitch,* the Supreme Court held that a law enforcement agency conducting a chemical test for alcohol has a duty to preserve and disclose all material evidence which the agency has gathered. The court held that a due process violation occurred when the defendant's test specimen and test solution from a

breathalyzer test were discarded. The defendant's eventual attempts to utilize discovery to verify independently the alcoholic content of the ampoule, to ascertain that exactly three centimeters of the solution had been used, and to examine the glass ampoule itself for any defects which would alter the alcohol reading were thus unfairly frustrated. (*Id.*, at pp. 649-650.)

The *Hitch* court, in considering the admissibility of "breathalyzer" results, determined initially that the results of the blood alcohol test "by their very nature constitute material evidence on the issue of guilt or innocence upon a charge of drunk driving." (*Id.*, 12 Cal.3d at p. 647.) The court held that the investigative agency involved in the test has a duty not only to disclose such material evidence but also to preserve it. Accordingly, the court stated that "where, as here, such evidence cannot be disclosed because of its intentional but nonmalicious destruction by the investigative officials, sanctions shall . . . be imposed for such nonpreservation and nondisclosure unless the prosecution can show that the governmental agencies involved have established, enforced and attempted in good faith to adhere to rigorous and systematic procedures designed to preserve the [evidence]. The prosecution shall bear the burden of demonstrating that such duty to preserve the [evidence] has been fulfilled." (*Id.*, at pp. 652-653.) If this burden is not met, the results of the test are to be excluded at trial. Since the *Hitch* rule implements a federal due process standard (*id.*, at pp. 645, 646), it is unaffected by California Constitution, article I, section 28, subdivision (d). (See *Brosnahan* v. *Brown* (1982) 32 Cal.3d 236 [186 Cal.Rptr. 30, 651 P.2d 274].)

In the present cases, it is conceded that no effort was made to capture breath specimens for later testing by the defense. Defendants contend that the intoxilyzer evidence should therefore have been excluded from trial.

In denying many recent motions to exclude intoxilyzer results, many lower courts have relied on *People* v. *Miller, supra,* 52 Cal.App.3d 666. In *Miller,* the Court of Appeal examined "the question [of] whether the recent decision of the Supreme Court (*People* v. *Hitch,* 12 Cal.3d 641 . . . ) should be extended to render inadmissible the results of all chemical tests of breath conducted by use of the 'Omicron Intoxilyzer.'" (*People* v. *Miller, supra,* 52 Cal.App.3d at p. 668.) The *Miller* court determined that "*Hitch* merely holds that evidence which the prosecution once possesses must be held. The test by intoxilyzer . . . may have 'gathered' evidence in the sense of placing the breath in the chamber, but it was not evidence of which the government could 'take possession.' The only element reducible to possession was the printout card, which has been preserved." (*Id.*, at pp. 669-670.)

We disagree fundamentally with the *Miller* characterization of what happens when a breath sample is taken. That is, in our view, such a taking is the collec-

tion of evidence within the *Hitch* rationale. The question then is whether the specimen may be exhausted in testing without taking available steps to obtain and preserve another specimen for retesting.

A similar situation confronted the Colorado Supreme Court in *Garcia v. Dist. Court, 21st Jud. Dist.* (1979) 197 Colo. 38 [589 P.2d 924]. Colorado, like California, uses urine, blood or breath tests for a determination of alcohol level, and samples of blood and urine "are customarily preserved for the use of the defense and to insure that the test is accurate." (At p. 926.) In further similarity to California, a presumption of driving under the influence arises from a certain level of alcohol in the blood. (*Ibid.*)

Two fact situations were before the *Garcia* court. In one, the breathalyzer tests and ampoules were destroyed in accordance with standard police procedures; in the other, the defendant was given a "Luckey Alco-Analyzer" breath test, which could not preserve a sample for testing. In both cases, the defendants' motions to suppress the results of the tests were denied.

Recognizing that in the first situation a sample of the defendant's breath "could have been preserved," and in the second other methods existed to preserve the defendant's breath, the court concluded: "The failure of the state to collect and preserve evidence, when those acts can be accomplished as a mere incident to a procedure routinely performed by state agents, is tantamount to suppression of that evidence." (589 P.2d at pp. 929-930.) "We hold, therefore, that in all cases where a defendant elects to submit to a breath test to determine his blood alcohol level, he must be given a separate sample of his breath at the time of the test or the alcoholic content of his breath in a manner which will permit scientifically reliable independent testing by the defendant, if that test is to be used as evidence. [Citations.]" (At p. 930.)

We are persuaded that the reasoning of the Colorado court—paralleling the *Hitch* rationale—is sound and that the same result should prevail in California. Due process demands simply that where evidence is collected by the state, as it is with the intoxilyzer, or any other breath testing device, law enforcement agencies must establish and follow rigorous and systematic procedures to preserve the captured evidence or its equivalent for the use of the defendant. (*People v. Hitch, supra,* 12 Cal.3d at pp. 652-653.)

With the exception of the cases reviewed in this decision (i.e., AO16358, AO16374, AO17265, AO17266) this holding will apply prospectively only to tests performed after this decision has become final. Although we place primary reliance upon *People v. Hitch, supra,* 12 Cal.3d 641, it may reasonably be presumed that law enforcement activities in breath testing have been performed in good faith reliance upon *People v. Miller, supra,* 52 Cal.App.3d

666, which, as we have noted, reached a conclusion contrary to our holding today.

The Trombetta and Cox groups of appeals are dismissed; in the Ward and Berry proceedings, writs of habeas corpus will issue granting new trials at which the intoxilyzer evidence will be excluded.

Rattigan, Acting P. J., concurred.

**CHRISTIAN, J.**—I concur fully in the judgment and write separately only to emphasize that by this decision we do not prescribe or recommend any particular devices or procedures but hold simply that those before us in these cases do not satisfy the due process requirements of *People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361]. In each case, the arresting officer urged the defendant to choose the breath rather than the blood or urine test but failed to inform him that as a consequence of this selection no sample would be retained. In none did the officer advise the driver of his right to preservation of a breath sample and obtain from him a waiver of that right. The Arizona Supreme Court has held that such a procedure is constitutionally adequate. (*Baca* v. *Smith* (1979) 124 Ariz. 353 [604 P.2d 617, 618-620].) As no driver here gave a knowing and intelligent waiver of his right to preservation of evidence, that question is not reached here. Similarly, we do not consider here a situation in which police establish and diligently follow rigorous and systematic procedures for preservation of samples but circumstances beyond their control frustrate retention of a sample in a particular instance. As the majority opinion indicates, the core requirement of *Hitch* is establishment of and adherence to procedures which ensure fairness in the administration of field tests. The responsibility for designing those procedures lies with the Legislature and with state and local law enforcement agencies.

Petitions for a rehearing were denied April 27, 1983, and respondent's petition for a hearing by the Supreme Court was denied June 23, 1983. Richardson, J., Kaus, J., and Reynoso, J., were of the opinion that the petition should be granted.

The United States Supreme Court granted a petition for writ of certiorari on June 11, 1984. See — U.S. —.