Russell ANSAY, Appellant,

v.

STATE of Alaska, Appellee.

Paul DUNNING, Appellant,

v.

STATE of Alaska, Appellee.

Nos. A–829, A–831.

Court of Appeals of Alaska.

March 21, 1986.

Carol A. Brenckle, Asst. Public Defender, Kenai, and Dana Fabe, Public Defender, Anchorage, for appellants.

James A. Hanley, Asst. Dist. Atty., Thomas A. Wardell, Dist. Atty., Kenai, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

OPINION

SINGLETON, Judge.

Russell Ansay and Paul Dunning appeal their convictions for driving while intoxicated (DWI), AS 28.35.030.

Ansay was arrested and charged with DWI on June 24, 1984. An Intoximeter test conducted at the Kenai jail yielded a result of .215. Dunning was arrested and charged with DWI on June 30, 1984. An Intoximeter test conducted at the Kenai jail yielded a result of .212. A breath-alcohol sample was preserved on behalf of each man.

On August 6, 1984, Ansay and Dunning, along with approximately thirty other DWI defendants, moved to suppress their Intoximeter results on the grounds that the method of breath sample preservation employed by the state did not comply with our decision in *Anchorage v. Serrano*, 649 P.2d 256 (Alaska App.1982).

District Court Judge Glen C. Anderson eventually ruled that neither Ansay nor Dunning was entitled to suppression. In a written order, Judge Anderson found that the state had generally taken reasonable steps to preserve breath samples and that the state had chosen a system which would, in the absence of serious operator error or equipment malfunction, yield scientifically acceptable results. The method used by the state was the magnesium perchlorate tube (MPT) system. *See Best v. Anchorage,* 712 P.2d 892 (Alaska App.1985); *State v. Kerr,* 712 P.2d 400 (Alaska App.1985). However, Judge Anderson also noted the existence of evidence sufficient to "open the possibility of operator error with respect to those samples preserved at the Kenai Police Department." According to the court, this evidence was "insufficient, standing alone, to establish negligence that has denied to any individual defendant a reasonable opportunity to cross-examine his Intoximeter 3000 test result." Because evidence presented to the court established that there is an error factor of approximately 10% in both the Intoximeter and MPT systems, however, Judge Anderson concluded that any Kenai defendant whose MPT result differed from his Intoximeter result by more than 20% should be able to have his Intoximeter result suppressed. Since none of the defendants whose cases remained before the court fit into that category, no results were suppressed.

Ansay and Dunning never had their MPTs analyzed, so the effect of Judge Anderson's ruling was to deny their motions to suppress. Their cases proceeded to trial in January. Each was convicted, based in part upon the Intoximeter evidence.

Dunning and Ansay contend on appeal that the trial court erred in refusing to suppress the results of their Intoximeter tests. They reason that evidence developed in their case, and in other cases around the state (discussed in *Best v. Anchorage* and *State v. Kerr*), eliminates the need to show that a retest was attempted in order to establish standing and, in addition, establishes that the MPT system was so flawed that they were denied a reasonable opportunity for a retest as a matter of law. *See Anchorage v. Serrano,* 649 P.2d 256, 258 (Alaska App.1982). We disagree and affirm the decision of the trial court.

This case presents an issue reserved for later decision in *Best* and *Kerr:* whether an attempted retest is a prerequisite to a motion to suppress an Intoximeter result on the grounds of alleged inadequacy in the MPT retention system, where the trial court expressly finds that the MPT system is properly functioning, but leaves open the possibility that retained samples might be defective in individual cases. Under such circumstances, we hold that the trial court does not abuse its discretion in requiring a retest before entertaining a challenge to the Intoximeter based on alleged deficiencies in the sample retained.

The proceedings in this case must be governed by our decision in *Anchorage v. Flack,* 685 P.2d 108 (Alaska App.1984). In *Flack,* the arrestee was given an Intoximeter test, but no sample was preserved because no perchlorate tubes were available. The trial judge suppressed the Intoximeter result, but his written conclusions were ambiguous with respect to the standard used. *Id.* at 110. We held that the *Serrano* standard "is essentially one of negligence, not strict liability":

If the governmental unit was free of fault in failing to provide the defendant a means of verifying the breathalyzer result, then suppression should not follow. We stress, however, that the duty is owed by the governmental unit, not its individual agents. Thus, a finding that an individual police officer or other person administering a breathalyzer examination was free from fault, would not satisfy *Serrano* if it was established that the governmental entity, through antecedent negligence, had created a situation in which individual officers administering the test could not provide the defendant a means of verification.

Generally, a person asserting another person's negligence has the burden of proving it. We believe that there are some good reasons for departing from the general rule in this kind of case.

First, as we pointed out in *Serrano*, in the typical case, the governmental agency will be in a position to furnish the defendant a basis for verification. 649 P.2d at 259. It is not unreasonable to require the governmental agency to establish that a particular case is not typical and justifies relieving it of the duty. Second, the circumstances preventing a governmental entity from complying with *Serrano* would be peculiarly within the knowledge of its agents. It is therefore not unreasonable to require it to establish its freedom from fault. We therefore conclude that a governmental entity seeking to excuse its failure to preserve a breath sample, or otherwise failing to enable a defendant to verify the results of a breathalyzer examination, has the burden of proving by a preponderance of the evidence its freedom from negligence.

*Id.* Since it was unclear whether the lower court had applied this standard, we remanded for further proceedings. *Id.* at 111.

We clarified *Flack* in our recent decision in *State v. Kerr*, 712 P.2d 400. In *Kerr* we stated:

> Under *Flack*, the defendant has the burden of showing that by virtue of some action or inaction on the part of the prosecuting authority, he was not furnished a reasonable means of verifying an adverse breath test result. He may show this by establishing either (1) that the means furnished were so generally and systematically defective that the results of an independent test should be inadmissible in evidence as a matter of law and without regard to the facts of his particular case;[1] or (2) that the results of an independent test in his particular case were so inaccurate that they were worthless for the purpose of impeaching or verifying the original breath test results, regardless of whether the means furnished were generally yielding independent test results which were admissible in evidence. If the defendant succeeds in showing that the means furnished were systematically defective, he might not need to show, as a prerequisite to seeking suppression, that he attempted an independent test in his own case.
>
> Once the defendant has sustained his burden of showing that he was not furnished a reasonable means of verification, he has established a *prima facie* case that the breath test results should be suppressed. In order to avoid suppression, the governmental agency in question must then prove by a preponderance of the evidence that its failure to provide the defendant an independent means of verifying the result was free of fault.

*Kerr*, 712 P.2d 400, 406 (footnote added). In *Kerr*, as in *Flack*, we remanded because it was unclear whether the court had applied the correct standard.

Judge Anderson essentially concluded that the MPT system, as a system, was not so flawed that the results of retests should automatically be held inadmissible in evidence without regard to the facts of individual cases. *Cf. Pulakis v. State*, 476 P.2d 474, 479 (Alaska 1970) (uncertainty regarding the general reliability of polygraph evidence warrants establishing a general rule that such examination results are never admissible). We view this as the equivalent of a finding that Ansay and Dunning had failed to satisfy the first prong of the test set forth in *Kerr*. If Judge Anderson's conclusion is correct, then under *Kerr*, Dunning and Ansay could not prevail unless they satisfied the second prong; *i.e.*, unless they showed that the results of independent tests in their particular cases were so inaccurate that they were worthless for the purpose of impeach-

---

1. Neither the three-judge panel in Fairbanks, Judge Andrews in Anchorage, nor Judge Anderson in this case, indicated whether they viewed this aspect of the question as a question of law or fact or, if of fact, whether adjudicative or legislative fact. *See State v. Erickson*, 574 P.2d 1, 4 & n. 14 (Alaska 1978); *State v. Contreras*, 674 P.2d 792, 799 (Alaska App.1983), *petition for hearing granted* (Alaska, April 5, 1984). The parties have not briefed this issue and so we do not decide it.

ing or verifying the original breath test. *Kerr*, 712 P.2d 400, 406.

In reliance upon the record developed in their cases, and upon the records which we reviewed in *Best* and *Kerr*, Dunning and Ansay challenge Judge Anderson's conclusion that the results are not automatically inadmissible. They summarize the evidence in their cases as follows:

> The testimony ... demonstrates that, although improvements have been made in [perchlorate] tube technology, there is no regular method of inspection of the adapter once it has been installed in the machine; that the quality control program set up by the state to check [perchlorate] tubes prior to use, does not involve checking each tube for defects or cracks; that there was no systematic retraining of personnel at the Soldotna or Kenai Police Departments in the collection of [perchlorate] tube samples; that there is no systematic procedure set up by these agencies to check the Adaptor O-Ring for signs of wear; that the check list used by both the Soldotna and Kenai Police Departments in collecting [perchlorate] tube samples does not conform to the checklist devised for that purpose by the Department of Health and Social Services.

Furthermore, there was evidence introduced that five out of seventeen officers at the Kenai Police Department failed p.c. tests ordered by the Department of Health and Social Services to determine who could collect [perchlorate] tube samples properly. Officer Dale Oldham, the supervisor-instructor at the Kenai Police Department, was himself off 32.78 percent. It was also brought out that the Kenai Police Department took no corrective action. As of the date of the hearing, the five officers whose test results were 20% above the Intoximeter reading had not been retested as required by the Department of Health and Social Services. Twenty of the cases which were included in the *Anderson* motion were made by officers who had failed the p.c. test. Judge Anderson found that these factors opened the possibility of operator error with respect to samples preserved

at the Kenai Police Department but held that they were insufficient to establish negligence.

■ The question considered by us in *Kerr* and *Best* and presented to Judge Anderson in this case was one of policy: Do these cases lend themselves to resolution by recourse to a general rule either validating or invalidating the MPT retention system or do variations between cases require resolution on a case-by-case basis? A general rule saves the parties the cost in time and money of case-by-case adjudication. Case-by-case adjudication assures that individual differences between cases, where relevant, receive appropriate attention. In *Kerr* and *Best* we adopted a two-pronged test differentiating between a general rule evaluating the MPT system as a system and case-by-case adjudication. We are not prepared at this time to hold that Ansay and Dunning have satisfied the first prong of the *Kerr* test requiring us to adopt a general rule invalidating the MPT system. Without foreclosing the possibility that future briefing and a more persuasive marshalling of the relevant facts might make a general rule more attractive, we have concluded that Judge Anderson could reasonably have found that the kind of complaints summarized above, *i.e.*, faulty training of administering officers, poor quality control of perchlorate tubes, and poor inspection practices regarding adapters installed in the Intoximeter, are appropriate for consideration under the second prong of the *Kerr* test rather than the first and lend themselves to case-by-case adjudication.

■ We hold also that a trial court faced with a challenge based on the second prong of the *Kerr* test does not err by requiring, as a condition precedent, a retest of the retained sample. In order to satisfy the second prong of the *Kerr* test, a defendant must show that the result of a retest in his case is essentially worthless. Worthlessness in this context is the rough equivalent of inadmissibility. In other words, the test we have adopted essentially requires the defendant to produce evidence strongly suggesting that the results of a

test of the magnesium perchlorate saved on his behalf would not be admissible at trial. The defendant's burden is therefore the converse of the burden the state would bear in seeking to authenticate a re-test for admission into evidence. If the prosecution in a criminal trial were to attempt to introduce an MPT test, it would normally be required to demonstrate as a matter of reasonable certainty that the result was not affected by any accident, carelessness, error or fraud. *See* A.R.E. 901(a). In addition, a court considering whether to admit such evidence may require additional proof. A.R.E. 901(b). By analogy, a court considering whether a particular retained sample is worthless to the defendant would not be acting unreasonably if it refused to decide the issue without considering, in addition to any evidence the defendant could offer of accident, carelessness, error or fraud in the retention of the sample, the actual results of a laboratory test of the sample.[2]

Judge Anderson held in these consolidated cases that any defendant whose MPT result differed from his or her Intoximeter result by more than 20% was entitled to suppression. In *Best v. Anchorage*, 712 P.2d 892, 895, we noted that focussing on the variance between the MPT result and the Intoximeter result may not comport with the reasons behind our decision in *Anchorage v. Serrano*, 649 P.2d 256 (Alaska App.1982). We pointed out that if all MPTs are so flawed that an accurate retest is impossible, the actual results obtained from such a retest would be essentially irrelevant. *Best v. Anchorage*, 712 P.2d 892, 895. Because the findings under consideration in *Best* were ambiguous with regard to the scope and nature of the problems with the MPT system, we could not affirm the court's decision to deny Best's suppression motion solely because of his failure to have his MPTs tested. *Id.* at 895–896 & n. 6.

The ambiguity of the findings under consideration in *Best* serve to distinguish that case. We could not reasonably equate the findings under consideration in *Best* with either a finding that the first prong of the test set forth in *Kerr* had been satisfied, or a finding that it had not been satisfied. In contrast, we have already concluded that Judge Anderson's findings were roughly equivalent to a finding that Ansay and Dunning failed to satisfy the first prong. Despite Judge Anderson's perhaps improper focus on the variance between MPT and Intoximeter results, the concern underlying his decision was that no realistic assessment of the value of a particular MPT could be made without having a retest done. Viewed in light of *Kerr,* Judge Anderson's decision on this point was the equivalent of a finding that the second prong of *Kerr* could not be satisfied in the cases before him unless the defendants produced MPT results. In *Best,* we suggested that the lower court's decision could be read the same way, but we did not actually reach this question, because of the possibility that the court there essentially found that the first prong of *Kerr* was satisfied. *See Best v. Anchorage,* 712 P.2d 892, 895–896 & n. 6.

Dunning and Ansay never satisfied either prong of the *prima facie* case for suppression established in *Best* and *Kerr.* It necessarily follows that the burden never shifted to the state to prove freedom from negligence. The trial court did not err in denying the motions to suppress.

The decision of the district court is AFFIRMED.

---

2. In their reply brief, Ansay and Dunning argue that a retest costs $129 which they cannot afford to pay. To require a retest as a condition for suppression, in their view, deprives them of constitutional due process and equal protection. This problem would exist regardless of the efficacy of the MPT retention system. We have never held that compliance with *Serrano* requires that defendants be furnished a cost-free retest. Ansay and Dunning do not claim that they sought court assistance in having their MPTs tested and were denied relief. We, therefore, do not address that issue.