**Catherine L. BEGLEY, Appellant,**

v.

**MUNICIPALITY OF ANCHORAGE, Appellee.**

**No. A–434.**

Court of Appeals of Alaska.

Dec. 27, 1985.

---

Richard D. Kibby, Dennis, Kibby & Ross, Anchorage, for appellant.

James A. Crary, Asst. Municipal Pros., Allen M. Bailey, Municipal Pros., and Jerry Wertzbaugher, Municipal Atty., Anchorage, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Catherine Begley was arrested in Anchorage for driving while intoxicated, AMC 9.28.020(a), on December 15, 1983. Her breath was measured on an Intoximeter 3000 breath testing machine; the result was .15. The alcohol in the breath sample analyzed by the Intoximeter was preserved in a tube containing magnesium perchlorate. Begley requested police to send her tube to New England Laboratories of Brattleboro, Vermont. A result of .20 was received from New England Laboratories on February 17, 1984.

In April 1984, evidentiary hearings were held in both Anchorage and Fairbanks in separate cases on whether the procedures used by law enforcement agencies in collecting and preserving breath samples by means of the magnesium perchlorate tube (MPT) met the requirements of our decision in *Anchorage v. Serrano*, 649 P.2d 256 (Alaska App.1982). On April 11, 1984, a three-judge panel in Fairbanks held that the procedures employed there were not yielding samples sufficiently reliable to satisfy *Serrano*. *See State v. Kerr*, 712 P.2d 400, (Alaska App., 1985). Accordingly, the panel suppressed the Intoximeter results in all the cases joined for purposes of the suppression motion and evidentiary hearings.

In the Anchorage case, *Anchorage v. Ramiro Hernandez, et al.*, 3ANM 83–4629 Cr., District Court Judge Elaine Andrews also found that there were serious defects in the MPT breath sample preservation system, but the solution she arrived at was not suppression of the Intoximeter result in every case. *See Best v. Anchorage*, 712 P.2d 892, (Alaska App., 1985). On April 17, 1984, Judge Andrews ruled that the Intoximeter result would be suppressed only where the variance between the MPT result and the Intoximeter result was substantial: not within plus or minus 15% of the Intoximeter result. In every case under consideration by Judge Andrews, a test of the MPT had been done, and the result was lower than the Intoximeter result.

Begley's case was set for trial on April 19, 1984. On the day of trial, Begley's counsel moved to suppress the Intoximeter result on the basis of the findings of Judge Andrews in Anchorage and the three-judge panel in Fairbanks the previous week. Because Begley's motion was based upon a variance of more than 15% between her Intoximeter result and her MPT result, it

was necessary that the MPT result from New England Laboratories be admitted into evidence for purposes of the motion. The municipality argued that the laboratory worker who conducted the test of the MPT must be available for cross-examination in order for the result to be admitted, even for purposes of this motion. Begley's counsel moved for a continuance so that the director of New England Laboratories could be brought to Alaska to testify. District Court Judge John Mason ruled that the result would be admitted for purposes of the motion. On the merits, Judge Mason expressed concern over the fact that Begley had not challenged the municipality's procedures earlier and yet wanted the benefit of the recently-decided *Hernandez* case. Because he did not want to continue the case, Judge Mason took the motion under advisement, and required the parties to select a jury.

Later in the day counsel were allowed to argue further on the motion. Defense counsel directed the court's attention to several findings of fact made by Judge Andrews. Counsel argued that no prejudice should attach to his client's case simply because the client had chosen to send her sample to an outside laboratory.

Judge Mason eventually concluded that the Intoximeter result need not be suppressed. He based his conclusion on a close reading of Judge Andrews' findings in the *Hernandez* case, which he incorporated into the record. Judge Mason pointed out that although the decision states that Intoximeter results will be suppressed where they deviate from retest results by *plus or minus 15%*, in every case before Judge Andrews, the retest results were lower. This was consistent, according to Judge Mason, with Judge Andrews' discussion of the particular problems in the collection and measurement of the MPT samples. As Judge Mason read the findings, every potential problem cited by Judge Andrews would tend to make the retest result *lower* than the true result. Since Begley had offered no evidence to show why the retest from Vermont would be *higher*, Judge Mason reasoned that suppression in

this case would be inconsistent with the logic of the *Hernandez* decision.

When the motion to suppress was denied, defense counsel again stated that his client would need a continuance in order to secure the presence of the director of New England Laboratories. Judge Mason responded by pointing out that in making his ruling he had assumed that the Vermont laboratory had made no mistake, and that he had no problem with admitting the result for purposes of the motion, although he expressed no opinion on the admissibility of the result for trial.

The next day the court was informed that the parties had stipulated that the motion to suppress was dispositive of the case so that a *Cooksey* plea could be entered. *Cooksey v. State*, 524 P.2d 1251 (Alaska 1974). A different attorney for the municipality was present, and she initially expressed some reservations about whether this case was appropriate for a *Cooksey* plea, but she eventually agreed. Judge Mason specifically stated that the issue of the motion for continuance would be included with the motion to suppress for purposes of the *Cooksey* plea, and there was no objection to this statement by the assistant municipal attorney. The court went on to find a factual basis for the plea and entered a judgment of no contest.

On appeal, Begley presses the same arguments made before the trial court. The municipality argues (a) that the issue of the motion for continuance was not properly preserved by the plea; (b) that Judge Mason should not have considered the retest result even for purposes of deciding the motion to suppress; and (c) that Begley's inability to explain the variance was sufficient grounds for denial of her motion.

In *Best v. Anchorage*, 712 P.2d 892 (Alaska App., 1985), we noted problems with the decision in *Hernandez*. We remanded the case to the trial court for reconsideration in light of our decision in *Anchorage v. Flack*, 685 P.2d 108 (Alaska App.1984).

Even if we assume that Judge Andrews' ruling in *Hernandez* was correct, *see Best*, 712 P.2d at 895–898, at 8–12, it does not follow that Begley was entitled to suppression. Judge Mason's interpretation of the *Hernandez* ruling, that it should not apply to cases in which the MPT result is *higher* than the Intoximeter result, seems to us a reasonable one. Begley would only be harmed if the MPT result were inadmissible in evidence, or, regardless of admissibility, the result was inaccurate, due to the municipality's negligence in collecting and preserving a sample of Begley's breath. *See Best*, 712 P.2d at 897. If Begley suspected that municipal negligence caused an inaccurate MPT test, it was incumbent upon her to take some steps toward showing this to the court. While it was certainly permissible for Begley to move to incorporate testimony or other evidence from either the Fairbanks or Anchorage proceedings, Begley relied exclusively on the *findings* of the two courts. Most importantly, our review of both the findings and the evidence presented in the two proceedings has not disclosed any basis for supposing that some action or failure to act attributable to the municipality could have led to an artificially *high* MPT result. *See Best v. Anchorage*, 712 P.2d 904, (Appendix); *State v. Kerr*, 712 P.2d 400, Op.No. 561 (Appendix). Thus, Judge Mason was essentially correct in concluding that nothing in Judge Andrews' findings supported an argument that the municipality was at fault with regard to Begley's MPT result. While there was a strong suggestion that the Vermont laboratory was at fault,[1] this would not have constituted a basis for suppressing Begley's Intoximeter result. *See Kerr*, 712 P.2d at 405–406; *Anchorage v. Flack*, 685 P.2d 108 (Alaska App.1984); *Klepzig v. Anchorage*, 661 P.2d 1096 (Alaska App.1983).

Given the fact that we have found nothing in the record of this case or any related case to suggest that Begley's MPT result was artificially high because of some act or failure to act chargeable to the municipality, we conclude that Judge Mason did not err in refusing to suppress Begley's Intoximeter result.

The issue of whether or not a continuance should be granted is in no way dispositive of this case, and we are somewhat puzzled by both Judge Mason's ruling that the continuance issue would be part of the *Cooksey* arrangement and the assistant municipal prosecutor's failure to object to this ruling. *See Oveson v. Anchorage*, 574 P.2d 801, 803 n. 4 (Alaska 1978). In any event, we need not decide whether this issue was properly preserved, because we find that Judge Mason did not abuse his discretion in denying a continuance. *Salazar v. State*, 559 P.2d 66 (Alaska 1976); *Klockenbrink v. State*, 472 P.2d 958, 964 (Alaska 1970). The continuance was requested by Begley on the grounds that time would be needed to secure the presence of the director of New England Laboratories. Even if Begley had made a showing that the director's testimony would be relevant to her defense at trial as well as her motion to suppress, Judge Mason could have correctly concluded that Begley had not been diligent in pursuing this line of defense. *See Salazar*, 559 P.2d at 72.

The conviction is AFFIRMED.

---

1. The municipality attaches to its brief in this case a letter from the director of New England Laboratories, dated May 11, 1984. It states that the laboratory will no longer provide independent analysis of MPTs, because the results obtained over the run of cases have been inexplicably high when compared to the Intoximeter results.