Paul H. BEST, Charles Boardman, James Williams, Everett Hewitt, Michael Hummel, Boyd Pangborn, Andrina Ramones, and Kevin Burlile, Appellants,

v.

MUNICIPALITY OF ANCHORAGE, Appellee.

No. A–1801.

Court of Appeals of Alaska.

Jan. 29, 1988.

Nancy J. Nolan, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellants.

John E. McConnaughy, III, Asst. Mun. Prosecutor, Jerry Wertzbaugher, Mun. Atty., Anchorage, for appellee.

Before BRYNER, C.J., SINGLETON, J., and GONZALEZ, Superior Court Judge.[*]

## OPINION

SINGLETON, Judge.

Paul H. Best and the other appellants were arrested for driving while intoxicated (DWI), AMC 9.28.020. They all consented to a chemical test of their breath to measure its alcohol content. An Intoximeter 3000 breath-testing machine yielded results indicative of intoxication in each case. The breath samples in each case were captured in a magnesium perchlorate tube (MPT), in an effort to comply with our decision in *Anchorage v. Serrano*, 649 P.2d 256 (Alaska App.1982) (prosecuting authorities must provide accused drunk drivers with means of verifying chemical tests of their breath).

Best and the others sought to suppress their intoximeter test results, arguing that the MPT collection and retention procedure did not comply with *Serrano*. They reasoned that the MPT system resulted in contaminated samples which could not be accurately retested. They relied on a favorable ruling by District Court Judge Elaine M. Andrews in another case, *Anchorage v. Ramiro Hernandez, et al.*, 3ANM 83–4629 Cr. Judge Andrews denied Best and the others relief because they had not demonstrated that each of their own samples was contaminated, and they appealed, *Best v. Anchorage*, 712 P.2d 892 (Alaska App.1985). We concluded that the *Best* case should be remanded to Judge Andrews for further findings of fact and

conclusions of law. 712 P.2d at 898. We issued similar orders in the other cases. On remand, Judge Andrews issued a written decision denying relief. That decision is set out in full in the appendix to this decision. On appeal, Best and the other appellants challenge Judge Andrews' ruling. We affirm.

The purpose of the retained breath sample is to provide a person charged with driving while intoxicated with a means of independently verifying[1] the accuracy of the results of the chemical test of the driver's breath. *Briggs v. State, Dept. of Public Safety*, 732 P.2d 1078, 1080 (Alaska 1987); *Champion v. Department of Public Safety*, 721 P.2d 131, 132 (Alaska 1986). The supreme court has referred to such an independent verification as akin to cross-examining the prosecutor's breath-testing instrument. *Champion*, 721 P.2d at 132, quoting *Lauderdale v. State*, 548 P.2d 376, 381 (Alaska 1976). If it is to serve this purpose, the retained breath sample must itself be capable of testing. If the result of the independent test is more favorable than the prosecutor's test, the defendant can then argue that the prosecutor's test was inaccurate. In order to serve this purpose, the result of the retest must be admissible in evidence as part of the defendant's case-in-chief.[2]

In *Hernandez*, Judge Andrews was apparently concerned that if the state mishandles the taking of the retained breath sample, or thereafter mishandles the retained sample resulting in its contamination, a retest of the sample will not accurately disclose the subject's contemporaneous blood-alcohol concentration and thereby expose earlier equipment malfunction or operator error in connection with the Intoximeter tests. Perhaps more important, the trial court reasoned that even if a retest

---

[*] Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

1. We use the phrase "independently verifying" to mean a verification that is not dependent on the skills or good faith of agencies under the prosecutor's control. *Russell v. Anchorage*, 706 P.2d 687, 693 (Alaska App.1985).

2. The defendant must, of course, establish a foundation for the admission of the retest. *See* A.R.E. 901, *et seq.* What the defendant must prove by way of foundation is not an issue in this case.

suggests that the prosecutor's evidence is inaccurate, it will not be admissible in evidence for this purpose because the prosecutor will successfully object on foundational grounds, *i.e.*, because the breath sample was contaminated.[3]

According to the trial court, if a favorable test is never admissible in evidence, then the defendant has not been furnished with a means of independently verifying the prosecutor's scientific evidence and the defendant has established a *Serrano* violation. In our earlier decision in this case, we recognized that the trial court in *Hernandez* might have found retests of retained breath samples potentially inadmissible on two alternate bases in support of a conclusion that the MPT system failed to provide a defendant his or her *Serrano* rights. First, the MPT theory could be invalid so that a valid breath sample would never be available for independent testing or, second, the theory could be sound but its implementation flawed so that independent testing in individual cases would be impossible. *Best*, 712 P.2d at 897. On remand, Judge Andrews concluded that the scientific theory underlying the MPT system was sound and that testable breath samples could be produced which would accurately reflect the subject's contempora-

neous blood-alcohol concentration but that the state and the municipality had been negligent in implementing it, apparently resulting in the contamination of up to fifty percent of the retained breath samples. Judge Andrews was of the view that a test of the MPT would accurately differentiate contaminated from uncontaminated samples. This would appear to be true at least to the extent that all of the procedural irregularities previously identified in the litigated cases resulted in substantially lower blood-alcohol readings than the Intoximeter results. *Begley*, 711 P.2d at 542–43.[4] Where a retest suggested that a given sample was contaminated, Judge Andrews was prepared to hold that the defendant had been deprived of his or her *Serrano* rights and would, therefore, suppress the prosecutor's scientific evidence. Where there was no retest, Judge Andrews denied such motions to suppress. Best and his co-appellants failed to obtain a retest; consequently, their motions were denied.

At the outset, we agree that *Serrano* was intended to provide a suspected intoxicated driver with a means of verifying the state's chemical test. Necessarily, the results of the retest used for verification should, if favorable, be admissible in evidence. We agree with Judge Andrews,

---

3. If the primary concern is to ensure the admissibility of a favorable retest, then perhaps the appropriate remedy if the police fail to preserve an uncontaminated breath sample is to estop the prosecutor from objecting on foundational grounds wherever it is arguable that difficulties with the defendant's foundation are traceable to agencies under the prosecution's control.

Judge Andrews and the other judges considering similar cases were concerned with a number of factors which might contaminate a retained breath sample. It appears, however, that all of these deficiencies lead to results on retesting that show a lower breath-alcohol reading than the prosecution's evidence, *i.e.*, a result that if admissible *would be favorable* to the defendant since it would suggest possible error in the original test. *See Begley v. Anchorage*, 711 P.2d 540, 542–43 (Alaska App.1985). We are aware of no evidence of sources of contamination which would erroneously show an elevated breath-alcohol reading. Such contamination, if possible, might mask an erroneous Intoximeter reading. In contrast, the sources of contamination discussed in these cases would always result in a lower blood-alcohol reading than the

Intoximeter, thereby suggesting an inaccurate Intoximeter reading. The defendant's problem would be to obtain admission of the retest for that purpose.

4. A valid MPT would accurately reflect the subject's blood-alcohol content at the time the Intoximeter test was performed. A test of the MPT would then verify whether the Intoximeter was properly functioning and the test was properly administered. It might appear, therefore, that Judge Andrews was reasoning in a circle when she verified the MPT by reference to the Intoximeter result in order to be able to verify the Intoximeter result by reference to the MPT. We believe that this dilemma disappears when we review the records in these cases and learn that all defects that have been relied upon by these defendants, as a basis for challenging the MPT, invariably result in understating the true blood-alcohol level. No claimed defect, other than defects in the retesting itself which would not involve these defendants since they did not retest, is capable of producing an erroneous result that overstates the subject's true blood-alcohol content. Thus, all errors are in the defendant's favor.

however, that the record in this case and by extension the records in the other cases raising similar issues, do not establish that the MPT system produced evidence which, if favorable to a defendant, would never be admissible. We therefore affirm Judge Andrews' conclusion that these defendants failed to prove a *Serrano* violation. We agree with Judge Andrews that on this record a defendant would have to establish that his or her retained breath sample was contaminated through state or municipal negligence in order to prevail. As Judge Andrews noted, such a showing could have been made by a retest of the sample in question.[5] None of the defendants in this case made a timely effort to prove that his or her individual breath sample was contaminated, and we therefore affirm the decision of the trial court.

## I.

Best[6] makes a series of related arguments. Essentially, he argues that the trial court erred in denying his motion to suppress. His motion was based on an alleged due process violation caused by the Municipality's failure to make a reasonable effort to preserve his breath sample. In support of this argument, he contends that the MPT preservation system, at the time of his arrest, did not constitute a scientifically reliable method of breath-alcohol preservation, and that the defects were so pervasive as to deny him due process of law. We have considered similar contentions in four cases. *Ansay v. State*, 715 P.2d 1194 (Alaska App.1986); *Best v. Anchorage*, 712 P.2d 892 (Alaska App.1985); *State v. Kerr*, 712 P.2d 400 (Alaska App. 1985); *Begley v. Anchorage*, 711 P.2d 540 (Alaska App.1985).

In a criminal case, the state is under a constitutional due process obligation to make available to the defense evidence in its possession that is both favorable to the accused and material to guilt or punishment, *i.e.*, exculpatory evidence. *See Brady v. Maryland*, 373 U.S. 83, 88 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In addition to this constitutional obligation, the state and, by extension, a municipal corporation engaging in criminal prosecution, has duties derived from Alaska's broad rules granting defendant's pretrial discovery in criminal cases. *See, e.g.*, Alaska Criminal Rule 16. In some cases, our state constitution and discovery rules impose a burden on the state to collect evidence potentially favorable to the defense. *Stephan v. State*, 711 P.2d 1156, 1160–61 (Alaska 1985), *Serrano*, 649 P.2d at 258. Where the state is unable to meet its constitutional and discovery obligations, a criminal defendant may be entitled to a sanction or remedy. *Putnam v. State*, 629 P.2d 35, 43 (Alaska 1980). It is important to stress, however, that the state is not strictly liable for failing to discover and turn over to a defendant any evidence that, in retrospect, might appear exculpatory. The state is only liable for negligence, *i.e.*, failure to exercise due care to discover and make available any potentially exculpatory evidence. *See, e.g., United States v. Bryant*, 439 F.2d 642, 653 (D.C.Cir.1971); *Anchorage v. Flack*, 685 P.2d 108 (Alaska App.1984).

Generally, a defendant seeking a remedy for the destruction or suppression of exculpatory evidence bears the burden of proof and must establish police negligence, *i.e.*, that the police knew or should have known of the existence of the evidence in time to secure it, and knew that the evidence was important material evidence, but failed to exercise reasonable care to obtain the evidence and make it available. In addition, the defendant must show causation and damage. This requires a showing that the lost evidence, if available, would have been exculpatory or, at the very least, would have enhanced the likelihood of a more

---

5. We do not understand Judge Andrews to have ruled out the possibility that a given defendant might show particularized harm, *i.e.*, that his or her individual breath sample was contaminated by some other method. No such offer was made in this case.

6. In part I of this decision, we will refer to the appellants collectively as "Best." Best does not join in the issues discussed in part II.

favorable verdict than would be likely in its absence.[7]

These requirements follow the general rule that a person seeking to establish another's negligence bears the burden of proof. In negligence cases, an exception to this rule exists where the plaintiff can show a violation of a statute. It is argued that since the statute establishes a duty of care, the violation of the statute establishes a breach of that duty. Under such circumstances, the burden shifts to the defendant to exonerate himself or herself of negligence. *See Ferrell v. Baxter*, 484 P.2d 250, 262–65 (Alaska 1971). We have applied an analogous rule when, contrary to a court rule or judicial decision specifically requiring the prosecution to procure and turn over a specific form of evidence to a defendant, the prosecution fails to do so. *See Anchorage v. Flack*, 685 P.2d at 109.

■ In *Flack*, we concluded that *Serrano* requires the prosecutor to exercise reasonable care to preserve breath samples or take other steps to allow defendants to verify the results of breathalyzer tests. When the state fails to do so, the burden shifts to the state to establish its freedom from negligence. *Flack*, 685 P.2d at 109. We stress, however, that although violation of a statute and, by extension, violation of a rule or court decision, may relieve the defendant of the need to prove negligence, it does not eliminate the burden to prove causation and damages. *Maddocks v. Bennett*, 456 P.2d 453, 460 (Alaska 1969); *State v. Kerr*, 712 P.2d 400, 406–07 (Alaska App.1985).[8]

Best's case turns on questions of causation and damage. Judge Andrews found that the MPT procedure for retaining breath samples, if properly administered, would produce scientifically reliable breath samples that would be available for retesting in order to verify the accuracy of the previous breath test. She found, however, that the state and the Municipality were negligent in implementing that system. The negligence consisted primarily of failure to adequately train personnel and failure to maintain the equipment in a reasonable fashion. These deficiencies did not, however, affect all breath samples retained during the period in question. In *Hernandez*, Judge Andrews found that such negligence resulted in contaminated samples in up to fifty percent of the cases she surveyed. She concluded on remand, however, that because all operators were not inadequately trained, and all equipment was not

7. Where the material evidence is no longer available by virtue of the state's negligence and, consequently, it cannot be determined for certain whether or not it would have been exculpatory, the supreme court has cautioned that doubt should be resolved in the defendant's favor. *Putnam* 629 P.2d at 44 n. 18. If, however, in light of the totality of the circumstances, the state establishes that the lost evidence would probably not have benefited the defendant, the court may find that the lost evidence would not have been exculpatory and therefore decline to impose a sanction.

8. In *Putnam v. State*, 629 P.2d 35 (Alaska 1980), the supreme court considered the prosecution's duty to make exculpatory evidence available to a defendant and concluded that failure to do so might trigger sanctions depending upon the degree of the state's culpability, the importance of the evidence which has been lost and the weight of the other evidence at trial. 629 P.2d at 43. In passing, the court indicated that when it was clear that evidence had been intentionally suppressed, *i.e.*, in bad faith, a sanction should follow. In other cases, the imposition of sanctions will depend upon the degree of prejudice to the defendant. *Id.* at 43. Apparently, the burden is on the defendant to show the materi-

ality of the evidence in question, and if materiality is established the state must show the absence of prejudice. In close cases, the court suggested questions of prejudice should be resolved in the defendant's favor. *Id.* at 44 n. 18. In a subsequent case, the supreme court cautioned that the state's good faith, *i.e.*, the motive for its failure to make evidence available, is relevant only when the absence of a good faith explanation raises the inference that the evidence available would have been detrimental to the prosecution, thereby establishing materiality. *Williams v. State*, 629 P.2d 54, n. 22 (Alaska 1981). In this case, unlike *Williams* or *Putnam*, the municipality arguably preserved the evidence in question. The issue is whether the retained sample was contaminated. Proof of contamination would meet the defendant's burden of proving causation and damage and trigger the state's burden to prove that, despite a contaminated sample, defendants nevertheless suffered no prejudice. *Putnam*, 629 P.2d at 44 n. 18. Judge Andrews determined that a retest was necessary to show contamination. Thus, the municipality's burden derived from *Putnam* and *Flack* never arose.

necessarily defective, that the government's antecedent negligence did not necessarily cause damage to any particular defendant. In order to establish causation and damage, in Judge Andrews' view, a defendant would have to have his or her retained sample tested to determine whether it was or was not contaminated. She referred to such proof as establishing "standing" to seek suppression.

■ Since it is possible that a defendant could demonstrate by other evidence that his or her retained sample was contaminated, we are not certain that a retest will always be necessary to show causation and damage. We do agree with Judge Andrews, however, that proof of causation and damage is necessary and that a retest is one way of establishing it. We also agree with Judge Andrews' ultimate conclusion that, since Best and the other appellants produced no such evidence, their motions to suppress the Intoximeter results were properly denied.

Best argues that the government's negligence was so pervasive that it compels an inference that his sample was contaminated, rendering a retest an unnecessary burden. We disagree. Judge Andrews found that the MPT system worked in a significant number of cases. If it did not work in Best's case, that fact should be established by proof, not speculation.

Best's reliance on *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923), is misplaced. In *Frye*, the court held that expert testimony about novel scientific theories should not be admitted in evidence at trial in the absence of evidence that the underlying theory had received general scientific acceptance. The supreme court has adopted the *Frye* rule in Alaska and has analogized it to Alaska Evidence Rule 403, which requires that a trial judge not admit otherwise relevant evidence if its probative value is outweighed by possible prejudice. *See Contreras v. State*, 718 P.2d 129 (Alaska 1986). Here, however, we are not dealing with novel scientific theories. The supreme court has accepted the general reliability of breathalyzer examinations, *see Wester v. State*, 528 P.2d 1179, 1181–83 &

n. 11 (Alaska 1974), and there is nothing in this record suggesting that the Intoximeter is less reliable than the breathalyzer. *Cf. California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984) (accuracy of "Intoxilyzer" test, as shown in the record, indicates a low probability that preserved breath samples would exculpate suspected drunken driver); *Thayer v. Anchorage*, 686 P.2d 721, 726–28 (Alaska App.1984) (testing of breathalyzer provided sufficient foundation to admit test results).

The negligence found in this case relates exclusively to the implementation of the MPT retention procedure, not to the underlying theory of breath testing to determine the alcohol content of a person's blood. The *Frye* test is therefore irrelevant. Consequently, it was not unreasonable for Judge Andrews to require testing of the defendant's Intoximeter sample as a condition prerequisite to a successful challenge to the Intoximeter result. *See Ansay v. State*, 715 P.2d 1194, 1197–98 (Alaska App. 1986).

## II.

### BOARDMAN, WILLIAMS, HEWITT, HUMMEL, PANGBORN, RAMONES, BURLILE

Our disposition of Best's appeal resolves the primary issue presented in these appeals as well. These defendants, however, raise an additional issue that Best has already litigated. In our earlier decision, we rejected Best's contention that the trial court erred in denying him a continuance to have his sample retested. *Best v. Anchorage*, 712 P.2d 892, 894–95 (Alaska App. 1985). Each of these defendants now raises a similar issue.

The facts differ slightly, but all these cases followed a common pattern. Each case was set for trial in accordance with customary procedures in the district court. The procedural rules require timely motions to suppress evidence under penalty of forfeiture. Alaska Criminal Rules 12 and 16. None of the defendants filed motions to suppress or made efforts to have their

retained breath samples tested until Judge Andrews decided *Anchorage v. Ramiro Hernandez, et al.,* 3ANM 83–4629 Cr. Only thereafter, and in some cases within a week of their scheduled trials, did the defendants, in reliance on *Hernandez,* move to suppress evidence of the Intoximeter results in their cases. The trial court summarily denied the motions relying on the absence of a retest. Each defendant then sought reconsideration, some on the day set for their trial, some thereafter, and requested a continuance to enable a retest. Some defendants asserted indigency and requested funds to pay for a retest. The trial court denied the requests as untimely. We affirm. *Salazar v. State,* 559 P.2d 66, 72 (Alaska 1976); *Klockenbrink v. State,* 472 P.2d 958, 964 (Alaska 1970); *Best,* 712 P.2d at 895.

■ We have addressed similar issues in a number of cases. *Best,* 712 P.2d at 894–95; *Annas v. State,* 726 P.2d 552, 558–59 (Alaska App.1986); *Wortham v. State,* 689 P.2d 1133 (Alaska App.1984); *Fox v. State,* 685 P.2d 1267 (Alaska App.1984). Generally, a defendant filing a late motion must show good cause for the delay in order to obtain a hearing. *Fox,* 685 P.2d at 1269–70. When the motion is filed late, but in good faith and before trial, and there is ample time to hear it without disrupting the scheduled trial, we have found an abuse of discretion in declining to hear the motion. *Fox,* 685 P.2d at 1269–71. When hearing the motion would delay the trial, we have found a refusal to consider the motion within the trial court's discretion. *See Wortham,* 689 P.2d at 1136–39; *Annas,* 726 P.2d at 558–59 (trial court within its discretion in deciding untimely motions without granting a continuance to obtain additional evidence).

In each of the present cases, motions were filed and decided prior to trial. The requests for reconsideration to obtain tests of the retained breath samples, however, would have required lengthy continuances of the trial date and the trial court acted consistently with *Annas, Wortham,* and *Fox* when it denied the continuances. Our treatment of these issues finds support in federal cases interpreting the comparable federal rules. *See* 1 Wright, *Federal Practice and Procedure: Criminal* § 193 (1982 and Supp.1987).

On appeal, the defendants object to this analysis based upon their right to due process under the state and federal constitutions. First, they contend that motions related to breath sample retention implicate due process and must be considered regardless of timeliness. Second, they contend that at least some of them were discouraged by poverty from obtaining the necessary retests. They also argue that they relied, to their detriment, on *Hernandez.* We reject these arguments.

The purpose of a criminal trial is the ascertainment of guilt or innocence. A defendant is denied "due process," in the sense that we are considering it here, if his or her trial is not reasonably calculated to determine his or her guilt or innocence. This is what we understand the United States Supreme Court to have considered when it adopted a test for due process violations in similar cases. The test requires a consideration of the totality of the circumstances to determine whether the alleged deprivation undermines confidence in the outcome of the trial. *Pennsylvania v. Ritchie,* —— U.S. ——, 107 S.Ct. 989, 1002–04, 94 L.Ed.2d 40 (1987) (disclosure and availability of evidence); *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (loss or destruction of evidence); *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (ineffective assistance of counsel). There is no requirement under the federal constitution that breath samples be retained for independent retesting. *California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). Thus, no federal right to due process is involved here. While the due process clause of the Alaska State Constitution does require breath sample retention, we are satisfied that denial of a continuance did not deprive these defendants of any right guaranteed by our state constitution.

The trial court could well have found that the defendants had sufficient notice of

their rights under *Serrano* and were well aware of their own condition at the time of the alleged offenses, *i.e.*, how much alcohol they had consumed and how their driving was affected. Therefore, they would have been on notice of any possible inaccuracy in their Intoximeter test results and the significance of a retest to prove that inaccuracy. Under the circumstances, the trial court could have concluded that their failure to seek a retest of the retained sample, despite the foreseeability of trial, suggests their lack of confidence in the outcome of such a retest.

There is simply no evidence in the record of any of these cases to suggest that the Intoximeter results themselves were the result of operator error or equipment malfunction. The defendants' complaints all relate to the MPT system for retaining breath samples, not to the validity of the Intoximeter tests administered in their cases. Consequently, the fact that some of these defendants might have prevailed under Judge Andrews' *Hernandez* ruling had they obtained a retest does not mean that denial of a continuance deprived them of due process. The *Hernandez* defendants may have been the recipients of a windfall since it is quite possible that the Intoximeter test in each of their cases was accurate but the retained breath sample contaminated. Judge Andrews could certainly reject the two explanations proffered for failing to retest: reliance on *Hernandez* and lack of funds. In *Hernandez*, retests were done and in these cases no defendant made a timely request for funds. Under the circumstances, refusing the defendants' belated requests for funds and continuances does not undermine our confidence in the potential outcome of their trial, nor does it deprive them of due process. *Cf. Maloney v. State*, 667 P.2d 1258, 1263–67 (Alaska App.1983) (rejecting an untimely due process claim based upon failure to preserve evidence in the absence of a strong showing of materiality).

The judgment of the district court is AFFIRMED.

COATS, J., not paticipating.

APPENDIX

PAUL BEST, Appellant,

vs.

ANCHORAGE, a Municipal Corporation, Appellee.

Case No. 3ANM83–4471 Cr, 3ANM83–5359 Cr 3ANM 84–680 cr./3ANM 84–642/3ANM 84–815cr./3ANM 84–951cr. 3ANM 84–1136cr./3ANM 84–2109cr./ 3ANM 84–2729cr.

IN THE DISTRICT COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT

Sept. 26, 1986.

DECISION ON REMAND

Paul Best was convicted of two driving while intoxicated charges on May 7, 1984. He appealed his convictions and on December 27, 1985, the Court of Appeals issued a decision remanding the case to District Court for further proceedings consistent with its opinion. On February 18, 1986, the court held a remand hearing and provided counsel with the opportunity to further brief the issues raised by the appellate court on remand. On June 16, 1986, a hearing was held and the arguments raised were taken under advisement. This decision on remand follows.

The appellate court raised essentially two questions in its decision:

1. Did the trial court apply a standard of strict liability or negligence in determining that breathalyzers should be suppressed in cases in which the test results of the independent sample, a perchlorate tube, did not fall within a specified range of variance.

2. Although the motion for continuance of the trial date was properly denied, was the motion to suppress properly denied? This court is asked to clarify whether the motion to suppress was denied because Mr. Best asserted it in an untimely fashion, or whether it was denied because he lacked standing to bring it.

These questions, which are somewhat interrelated, will be answered in turn.

## I. DID THE TRIAL COURT APPLY A STANDARD OF STRICT LIABILITY OR NEGLIGENCE IN DECIDING TO SUPPRESS THE BREATHALYZER RESULTS?

The court in *Municipality v. Ramiro Hernandez, et al.,* Case No. 3AN83–4629 Cr. summarized its findings with regard to the development and implementation of the perchlorate tube method of preserving an independent breath sample in compliance with *Anchorage v. Serrano,* 649 P.2d 256 (Alaska App.1982). The government, specifically the State of Alaska, through Everett Clary, its chemist, did not act negligently in providing a means to verify the results of the intoximeter. The tests performed by Mr. Clary, as demonstrated by the evidence, showed that the state selected a method capable of yielding accurate results. Further, the testimony suggested that the state continued to monitor the use of the approved system in the field. The trial court finds no negligence on behalf of the state, and therefore no negligence to be imputed to the municipality, as a result of the testing done by the state to approve the perchlorate method of independent sample-saving.

However, the court concluded, as a result of the hearings in *Hernandez,* that the municipality was negligent in implementing the system developed by the state. The record of the hearing reflects that, in the Anchorage area, the state, through the district attorney's office and the troopers, did not adopt the approved method of perchlorate tube collection as the sole method of providing an independent sample of breath to people arrested under state jurisdiction. The state provided a "backup" blood test at the defendant's request. The municipality, without any method of field testing of the state-approved perchlorate tube method, adopted that method, without a backup of an independent blood test. Further, the court's findings in *Hernandez* are extensive regarding the wholesale lack of training of officers to insure that the method was properly utilized in the field. Finally,

the testimony in *Hernandez* clearly showed that the municipality failed to maintain the adaptors in a reasonable fashion. The state selected the adaptors and the court determines from the facts presented that the state was not negligent in selecting the adaptors. What appeared to have happened, according to the evidence adduced in the *Hernandez* hearing, was that the adaptors were mishandled and that there was no routine maintenance performed on the adaptors which might have pointed out, at an early stage, any defects in the adaptors which could have been remedied before they caused erroneous results in the collection of the perchlorate tubes.

There is another source of error which was pointed out in the *Hernandez* decision, and that is the error that occurred in the re-test of the perchlorate tubes at Humana Hospital. As the findings suggest, Humana was not acting as the agent for the state or the municipality. However, it should be noted that Humana Hospital was the only place statewide to which defendants could turn to have their perchlorate tubes tested. Further, the findings in *Hernandez* point out that the state, through Everett Clary, provided Humana with a protocol to follow in testing the perchlorate tubes. That protocol left out some technical steps which Mr. Clary indicated may have affected the result in the re-test of the tube.

Thus, the court finds that the municipality was negligent. The court did not, at the time of the *Hernandez* hearings, or on remand, apply a standard of strict liability to the municipality's actions. However, the court finds that the municipality's negligence, although extensive, did not pervade the entire process sufficient to require the trial court to suppress all breathalyzer results obtained between July 1983 and February 1984. The evidence in *Hernandez* suggests that in somewhat less than half the cases results of the perchlorate tubes taken in field situations were within the expected target zones, that is, within 15 percent of the breathalyzers.

The appellate court appears to be concerned about the application of *Municipali-*

*ty v. Flack*, 685 P.2d 108 [Alaska App. 1984], and *State v. Kerr*, 712 P.2d 400 (Alaska App.1985), to the facts in this case. To avoid the necessity for further remand, this court finds, in light of *Kerr*, that the defendants in the *Hernandez* case failed to prove the first prong of the *Kerr* test, that is that the entire system was so flawed that individual results of perchlorate tube re-test would be irrelevant. The court finds that the defendants in *Hernandez* did prove the second prong of the *Kerr* test, that the results of their re-test were so inaccurate that they could not be used to verify the results of the breathalyzers. The inaccuracies were caused by the municipality's negligence. Because of the combination of factors, all of which could have contributed to the inaccurate results, it is factually impossible for any defendant to point with specificity to the source of the error, whether it be operator error caused by the municipality's grossly negligent training of its officers, or error caused by its mishandling of the hardware and failure to maintain it, or error caused by the Humana Hospital re-test following an erroneous protocol provided by the state. Thus, the court required, under the *Kerr* analysis, that they simply prove a 15 percent variance from the target value.

The appellate court has asked the question, did the trial court fault the government for design of the project in total or only its implementation in individual cases? The answer to that question is somewhat more complicated than the question would suggest. The court finds no fault with the state in developing and approving the MPT collection system. The court finds negligence by the municipality in its implementation of the state project in the municipality's training of its officers and maintenance of approved equipment. The municipality's overall negligence resulted in the denial of defendant's right to due process under *Serrano* in *individual* cases.

Despite the municipality's negligence, the evidence showed that in substantial numbers of cases the defendants' due process rights were protected. Experienced officers, aware of the need for O-rings, and conversant with the proper method of collection with the perchlorate tubes, were able to satisfy the court's demands under *Serrano*. Thus, the trial court did not suppress all breathalyzer results obtained between July 1983 and February 1984.

Additionally, the appellate court has asked the trial court to identify each potential source of MPT error that may have been in operation. Best's breathalyzers were taken on July 16, 1983, and on August 24, 1983. According to the evidence, all potential sources of MPT error previously listed may have been operating at the time of this defendant's tests. Specifically, the operator may not have been adequately trained and, thus, improperly employed the perchlorate tube. The adaptor may have been used without the proper O-ring in place and thus, caused an erroneous sample to have been collected. The only error that could not have been operating in Mr. Best's case was any error attributable to the Humana Hospital re-test procedure because Mr. Best did not have his perchlorate tube tested.

On the other hand, Mr. Best's processing may have been handled by an experienced officer who, although negligently trained, performed the collection of the independent sample correctly and carefully fitted the negligently-maintained adaptor with the O-ring that assured proper collection of Mr. Best's breath. Since Mr. Best left his tubes untested for ten months, up to the date of trial, the trial court is unable to answer the question of whether Mr. Best was the victim of any negligence by anyone.

It should be noted that, in the *Hernandez* decision, each and every one of the defendants joined in that decision had the officer testify to the specific collection method as to his tube. The trial court cannot, at this stage, give credence to any testimony that may be adduced as to the exact procedural steps the officer may have taken in collecting Mr. Best's perchlorate tubes.

## II. WAS THE TRIAL COURT'S DECISION ON THE MOTION TO SUPPRESS BASED ON TIMELINESS OR STANDING?

The trial court relied on both timeliness and lack of "standing" in denying the de-

fendant's motion to suppress. When one views the chronology of these cases, it appears the two issues are linked, if not inextricable.[1]

A review of the procedural history of these cases, as detailed in footnote 1, demonstrates that these cases had been pending for well over nine months. All of the delays in the cases were attributable to the defendant and notably the defendant's consistent inconsistency as to how he wished to proceed. Several times in each case, Mr. Best decided the day before trial that he wished a change of plea. The trial date was vacated and a change of plea date was set. At the change of plea hearing he decided he wanted a trial. That pattern is repeated in both cases. When defense counsel again requested a continuance in May to a trial date in August based on motions that *would* be filed in the future *if* a perchlorate tube test were performed and *if* that perchlorate test was inconsistent with the intoximeter result, this court denied that request. The defendant's request for a continuance was vigorously opposed by the municipality, who pointed out to the court the maneuverings of the defendant in the past to delay the case. As the appellate court indicated, the defendant's claim that he could not have anticipated the rulings in *Hernandez* is without merit and this court can find no just reason why a motion to suppress was not filed in accordance with the then-existing Pretrial Order which would have required defense counsel to file a motion to suppress in January 1984 in both cases. The defendant was represented by the public defender and the public defender was chiefly involved in the hearings in the *Hernandez* case, which were initiated in January of 1984.

This court is mindful of appellate decisions favoring a hearing on the merits. This, however, was a form motion filed at trial call, less than 24 hours before trial, and more than four months after it was due, and the hearing of which would require the delay of the trial. This court denied the motion to continue the trial and the motion to suppress based, in large part, on timeliness, taking into account the significant delay which had occurred since the defendant's arrest, and the total lack of

1. In Case No. 83–4471 Cr., the procedural history of the case is as follows: (1) Defendant arrested on July 16, 1983. (2) Numerous delays in getting the defendant into court, including bench warrants and delays attributable to his continued request and denial of a public defender. (3) Change of plea set at defendant's request in late December was vacated. (4) January 1984, trial is set for April 2, 1984. (5) Defendant failed to show up for trial call and a bench warrant issued. (6) Trial reset for April 4, 1984, and request for continuance denied. (7) Case trails for some time and on April 5, 1983, defendant, through counsel, advised the court he wanted to change his plea and the he was working on a negotiated disposition with another pending DWI. Change of plea set for April 10. (8) Change of plea continued from April 10 to April 24. (9) On April 24 defendant changed his mind about change of plea for at least the second time and requested August trial date. (10) The court, according to policy when a change of plea does not occur and a trial date has passed, immediately set the case into the next available trial call date on May 1, 1984. At trial call on May 1, 1984, for the first time in this case, the defendant notified the Judge Andrews that he wished a continuance based on the ruling in *Hernandez*, which occurred on April 17, 1984. In Case No. 83–5359 CR: (1) Mr. Best was arrested for DWI on August 27, 1983. (2) Arraignment was set for September 13 and a public defender was appointed to represent Mr. Best on that date. (3) Calendar call was set for September 27. (4) At the calendar call, trial was set for December 13, 1983. (5) On December 12, 1983, at trial call on the day before trial, defendant requested to change his plea. The change of plea was set for December 27. (6) On December 27 the change of plea was continued to December 28 because Mr. Best had not had contact with his attorney. (7) On December 28 the change of plea was continued to January 12, 1984. (8) On January 12, 1984, the defendant changed his mind about the change of plea and requested a trial. Calendar call was set for January 17, 1984. (9) On January 17, 1984, trial was set for April 4, 1984. (10) On April 5, 1984, while awaiting trial, Mr. Best again decided to change his plea and it was set for April 10, 1984. (11) On April 10, 1984, the change of plea was continued to April 24, 1984, at defense request. (12) On April 24, 1984, the defendant again decided not to change his plea, and advised Judge Bosshard he wanted to go to trial in August and he wanted an opportunity to test the perchlorate tubes. Once again, according to policy, trial call was set for the next available trial call date, May 1, 1986. (13) Trial occurred on May 9, 1984. (14) No written motion to suppress was filed until May 3, 1984, two days *after* the case had been called for trial, and nine days after an oral notification on April 24 of an intent to raise a *Hernandez* issue.

any excuse on the part of the defense for its failure to comply with the Pretrial Order and the court's belief that a motion to suppress, based on *Hernandez,* could not be heard without the perchlorate tube result, which would not have been attainable in this case until August, according to defense counsel.

The motion to suppress was denied on the basis of "standing" to the extent that the defendant had not made a timely effort to obtain a perchlorate tube result. In the context of the *Hernandez* decision, a perchlorate tube result was the critical information that was necessary and without which the court could not determine, on a case-by-case basis, under the *Kerr* standard, if a particular defendant had been deprived of his right to due process by the negligence of the municipality.

SUMMARY

In summary, the court applied a standard of negligence, not strict liability, in determining whether the municipality met the dictates of *Serrano.* The defendant's motion to suppress was denied on both timeliness and "standing," as that term applies in the context of the *Hernandez* and *Kerr* decisions.

DATED at Anchorage, Alaska, this 26th day of September, 1986.

/s/ Elaine Andrews
ELAINE M. ANDREWS
District Court Judge.